STATE OF NORTH CAROLINA v. ROBERT LEWIS BROWN

No. 7322SC627

(Filed 26 September 1973)

1. Constitutional Law § 30— 15 months between arrest and trial — no denial of speedy trial

Where defendant was arrested in November 1971, the officer whom he allegedly shot was in hospitals and unavailable to testify until August 1972, defendant petitioned for removal of the cases

---

State v. Brown

---

against him to another county and the petition was granted in September 1972, but crowded court calendars in the new forum precluded trial until February 1973, although the State and the defense were ready for trial as of October 1972, defendant failed to show that his right to a speedy trial was impermissibly abridged.

2. **Contempt of Court § 2; Criminal Law § 98— misbehavior of defendant — removal from courtroom — no error**

The court has inherent power to take whatever legitimate steps are necessary to maintain proper decorum and appropriate atmosphere in the courtroom during trial, and removing an unruly defendant qualified as such a legitimate step; therefore, the trial court did not err in removing defendant to an adjoining room where he could hear the proceedings over an intercom system and communicate with counsel by telephone where the court had previously warned defendant about interrupting the proceedings in a contemptuous manner, given him the option of behaving or of being removed from the courtroom, and informed him that he could return to the courtroom if and when he promised to behave.

3. **Criminal Law § 171— two offenses arising from one incident — guilty verdicts — judgment entered on one charge only — no prejudice to defendant**

Where defendant was charged with and found guilty of felonious secret assault and felonious assault with intent to kill inflicting serious injury, dismissal of the assault with intent to kill charge was not required, though both offenses arose from the same incident, since no judgment was entered on the charge of felonious assault with intent to kill inflicting serious injury and defendant was not harmed by reason of the verdict on that charge.

APPEAL by defendant from *Copeland, Special Judge,* 12 February 1973 Session of Superior Court held in IREDELL County.

Defendant Robert Lewis Brown was indicted under three separate bills for felonious secret assault (G.S. 14-31), felonious assault with intent to kill inflicting serious injury (G.S. 14-32(a)) and felonious assault on a law enforcement officer (G.S. 14-34.2). The felonious secret assault and felonious assault stemmed from defendant's shooting of Deputy Sheriff Ted Elmore. The charge of felonious assault on a law enforcement officer resulted from the assault on police officer Paul Burgess. The offenses occurred on 11 November 1971 and arrest warrants for defendant were issued and executed at that time. In September 1972, upon petition of defendant, two of the actions were removed from Catawba to Iredell County. The third cause was removed in January 1973. All three cases were consolidated for trial at the 12 February 1973 session.

Prior to trial, defendant filed a motion for speedy trial and later presented a motion to dismiss for lack of a speedy trial which were both denied. In addition the court denied defendant's pretrial motion to dismiss the charge of assault with a deadly weapon with intent to kill on the grounds defendant was already charged with the crime of secret assault for the same act. The State's evidence tended to show the following.

In the early morning hours of 11 November 1971, Deputy Sheriff Ted Elmore stopped a 1961 Chevrolet heading east on U.S. Highway 64-70 in Catawba County. His attention had been directed to the vehicle by reason of the manner in which it was being operated. After stopping his patrol car behind the other car, he started to get out. As he stepped out a shot was fired which struck him in the right elbow. Elmore tried to reach over and draw his pistol with his left hand. He saw defendant fire another shot which struck him in the stomach. Defendant was standing at the back of the door on the driver's side of the Chevrolet. The lights from the patrol car were shining directly on defendant. The second shot turned Elmore around and as he fell he was shot again. The last shot struck him in the back and he fell to the pavement.

Henry Rink, a truck driver, testified that he saw the patrol car and the car in front of the patrol car. As Rink approached, the front car was driven away at a high rate of speed. Rink found Elmore beside his patrol car. Rink used the patrol car radio to call for help and broadcast a description of the suspects and the car in which they had fled.

Paul Burgess, a Newton police officer, heard the radioed call for help, the description of the fleeing vehicle and its occupants and their direction of travel. While proceeding along Highway 321 toward 64-70 in an attempt to intercept the suspects, Burgess met and passed a Chevrolet similar to the one described in the radio message. He turned around and began pursuit. After Burgess had closed to within 25 to 30 feet of the Chevrolet, its passenger side door was opened and a shot fired in his direction. The suspect vehicle then veered to the right and into an embankment, whereupon two occupants abandoned the car and fled into nearby woods. At this time two more shots were fired at Burgess. From 100 to 250 police officers surrounded and searched the woods and nearby area. Defendant was found hiding under a trailer in the vicinity of the

woods. A .38 calibre pistol was also recovered from under the trailer. This pistol and several spent .38 calibre casings found in the woods some distance from the Chevrolet were given to the SBI for testing. Ballistic tests disclosed that 3 of the 4 cartridges had been fired from the weapon taken from defendant. A primer residue examination of defendant's hands revealed that defendant had recently been in direct contact with or close proximity to a pistol which had been fired.

Presentence evidence disclosed that the impounded Chevrolet was registered to a fictitious Georgia resident. Several loaded weapons and a quantity of ammunition were found in the trunk of the car, including: one Ruger .44 Magnum carbine rifle; one hi-standard Flite King Shotgun; one J. C. Higgins Bolt Action Shotgun, 12 gauge; one Mossberg 12 gauge shotgun; one U. S. Carbine rifle; one U. S. Military M-14 rifle; one M-1 30 calibre carbine rifle; one Savage, Model 99, .300 calibre rifle; one Military M-72 rocket launcher; one Taurus .38 revolver; one Classic Crossbow, 80 pound test; and an assortment of knives.

The jury found defendant guilty as charged in all three bills of indictment. The court sentenced defendant to 18-20 years on the count of felonious secret assault on Elmore; it continued prayer for judgment with respect to the count of assault on Elmore with a deadly weapon with intent to kill, inflicting serious injury; and the court sentenced defendant to 4-5 years for assault on a law enforcement officer (Burgess) with a firearm, to run consecutively with the sentence on the first count. Defendant appealed.

*Attorney General Robert Morgan by Donald A. Davis, Assistant Attorney General, for the State.*

*Alston, Pell, Pell & Weston by E. L. Alston, Jr., for defendant appellant.*

VAUGHN, Judge.

[1]  Defendant contends that since he was arrested in November 1971 and his case was not heard until February 1973, his right to a speedy trial has been impermissibly abridged. We disagree. Like many other constitutional rights, that of a speedy trial is not absolute with the result that not every delay is improper. "The essential ingredient [of justice] is orderly expedition and not mere speed." *Smith v. United States,* 360 U.S.

1, 10, 3 L.Ed. 2d 1041, 1048, quoted in *United States v. Marion,* 404 U.S. 307, 313, 30 L.Ed. 2d 468, 474. Indeed the very nature of the criminal process makes a certain amount of delay between arrest and trial inevitable. For this reason, the right to speedy trial has been described as "necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the right of public justice." *Beavers v. Haubert,* 198 U.S. 77, 87; 49 L.Ed. 950, 954.

The North Carolina Supreme Court has recently reiterated the view that the appropriateness of a given delay must be evaluated "in light of the circumstances of each case," *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972), and in light of the purpose of the right which is to prevent "purposeful or oppressive delays which the State could have avoided by reasonable effort." *State v. Neas,* 278 N.C. 506, 180 S.E. 2d 12 (1971), quoting *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274. The record discloses that Elmore, the victim of the assault which caused paralysis of his legs, was "in the Baptist Hospital, Winston-Salem, North Carolina, from November 11, 1971, until April 27, 1972, except for a one-day trip to Catawba County for a preliminary hearing, when he testified from a stretcher; and that from April 27, 1972, until the latter part of July, 1972, he was in the Craig Rehabilitation Hospital in Colorado; and that upon his return in July, 1972, he was ordered to remain confined to bed for about a month after that date." The unavailability of this witness constituted an obviously acceptable reason for delaying trial. *See State v. Brown,* 282 N.C. 117, 191 S.E. 2d 659. In September 1972, defendant's removal petition was granted. Crowded court calendars in the new forum precluded trial until February 1973, although the State and the defense were ready for trial as of October 24, 1972. Defendant requested removal and should not be allowed undue benefit from any reasonable delay resulting therefrom. *State v. Johnson, supra.* We do not find that the 4-month delay after removal resulting from a crowded docket was either unreasonable or oppressive or that defendant has shown prejudice by reason of the delay. *State v. Brown, supra; State v. Powell,* 18 N.C. App. 732, 198 S.E. 2d 70.

[2] Defendant asserts that his removal from the courtroom during trial deprived him of his contstitutional right to be informed of the accusations against him and to confront his

State v. Brown

accusers. The court had warned defendant about interrupting the proceedings in a contemptuous manner and defendant was finally given the option of behaving or of being removed from the courtroom. Included among the other disruptions by defendant was the following incident. During the testimony of Officer Elmore defendant interrupted the witness by saying, "you're a liar. You're a goddamn liar. I am not going to be framed." To the court's request that he be quiet, defendant responded, "I am not going to be framed. I don't dig no railroading. The man is lying." At this point, the jury was taken from the courtroom. When the court reprimanded defendant for using vile language, he replied, "I didn't use vile language." Shortly thereafter, defendant asserted, "I said I don't want nobody lying on me, period. If somebody lies, I am going to speak." Defendant also told the court, "What you're saying don't intone with my ears." Upon his refusal to respond to the judge's question of whether he wished to remain in court or not, defendant was removed to an adjoining room where he could hear the proceedings over an intercom system and communicate with counsel by telephone. Defendant was informed he could return to the courtroom if and when he promised to behave. When trial resumed the following day, defendant was seated beside counsel at the counsel table.

It is clear that the court has inherent power "to take whatever legitimate steps are necessary to maintain proper decorum and appropriate atmosphere in the courtroom during a trial." *State v. Dickerson,* 9 N.C. App. 387, 176 S.E. 2d 376. It is equally clear that removing an unruly defendant qualifies as such a legitimate step. As the United States Supreme Court has observed in *Illinois v. Allen,* 397 U.S. 337, 343-44, 25 L.Ed. 2d 353, 359:

> "We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly."

Despite the patience of the trial judge and his repeated warnings, the defendant contemptuously persisted in disorderly and disruptive conduct. After his removal from the courtroom, reasonable steps were taken to insure that defendant, if so inclined, could follow the trial and communicate with his attorney. Later, defendant's apparent attempt to thwart the progress of the trial having failed, he was allowed to return to the courtroom. There is no merit in defendant's assignment of error based on his removal from the courtroom.

[3] In other assignments of error defendant contends that the court should have dismissed, before trial, the charge of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant argues that since duplicate charges are impermissible, dismissal was mandated by the pendency of the charge of secret assault arising out of the same incident. In related challenges, petitioner maintains that the court erred in denying a motion to require the State at the close of the evidence to elect between the charge of felonious secret assault and felonious assault with a deadly weapon with intent to kill, and to instruct the jury so as to allow it to return a verdict of guilty of both charges. For present purposes it is sufficient to say that since no judgment was entered on the charge of felonious assault inflicting serious injury (G.S. 14-32(a)), defendant has not been harmed by reason of the verdict on that charge.

Defendant's remaining assignments of error have been considered and found to be without merit. In the trial from which defendant appealed we find no prejudicial error.

No error.

Judges BRITT and HEDRICK concur.