STATE OF NORTH CAROLINA v. PERRY LEE TOLLEY

No. 97

(Filed 14 July 1976)

1. Criminal Law § 158— motion to amplify record on appeal — denial proper

Motion of defendant's appellate counsel to amplify the record on appeal which was made one day before oral arguments were heard in the case is disallowed since (1) that portion of defendant's motion containing a recitation of fact is outside the scope of Rule 9(b)(3) of the Rules of Appellate Procedure, which enumerates what the record on appeal in criminal cases shall contain; (2) that portion seeking to bring forward the pretrial orders of confinement and the post-trial order for payment of legal fees is irrelevant to the question whether defendant's motion for a continuance was properly denied; and (3) that portion of the motion referring to a statement by the jury foreman to the trial judge after the jury had been discharged, and the court reporter's affidavit in support thereof, are improper as an attempt to impeach the verdict with hearsay evidence based upon statements by the jurors themselves.

2. Criminal Law § 91— motion for continuance denied — question of law raised — review on appeal

Where defendant contended that the trial court's ruling denying his motion for a continuance effectively denied him the right to offer testimony and the right to compel the attendance of out-of-state witnesses, thereby denying him a "fundamental element of due process of law" under both federal and state constitutions, the question presented was one of law rather than discretion, and the ruling of the trial court was reviewable on appeal.

3. Criminal Law § 91— motion to continue — no misapprehension of law in denial

The record in this rape prosecution discloses that the trial court did not deny defendant's motion for continuance under a misapprehension of the law in that the court was unaware of the provisions of G.S. 15A-811 et seq., the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, where the

State v. Tolley

record reflects that the court issued certificates pursuant to the provisions of the Act to procure the attendance at trial of three prosecution witnesses who resided in Virginia, but defendant did not seek the court's assistance in summoning witnesses pursuant to the Act.

**4. Constitutional Law § 31; Criminal Law § 91— motion to continue — presence of family members sought — denial of motion — no denial of due process**

The trial court in this rape prosecution did not commit prejudicial error amounting to a denial of due process in failing to continue the case so that additional members of defendant's family might be subpoenaed as witnesses for him, where the record does not show that names and addresses were furnished the court, and no affidavit or other proof was offered in support of the motion for a continuance; moreover, it may be assumed that absent brothers and sisters, even if present, would not have added significantly to the testimony of defendant's mother and sister who testified in his behalf.

**5. Criminal Law §§ 73, 80— doctor's report excluded as hearsay — reference to report not prejudicial**

Defendant was not prejudiced where a rape victim testified that she and another rape victim had been examined by a doctor, the doctor was on vacation but she had the doctor's report, defendant's objection was sustained, and the district attorney stated that he did not want to introduce the doctor's report but just wanted to show that the witness went to a doctor.

**6. Criminal Law §§ 89, 113— prior inconsistent statement — jury instruction proper**

The trial court's instruction with respect to a prior inconsistent statement allegedly made by the prosecutrix that "What she said at the earlier time is not evidence," though technically erroneous, was not prejudicial to defendant, since the portion of the charge immediately preceding and immediately following the challenged sentence correctly informed the jury that the prior inconsistent statement of the prosecutrix, if made, could be considered for the purpose of impeaching her testimony at trial.

**7. Criminal Law §§ 89, 114— instruction on corroborative testimony — no expression of opinion**

The trial court's instruction concerning corroboration of the prosecutrixes' testimony did not amount to an expression of opinion, since the instruction, though slightly garbled, was quickly corrected by the trial court, and the instruction, as it appeared in the record, was improperly punctuated by the court reporter thus producing an inaccurate recital of what the court actually said.

**8. Criminal Law § 140; Rape § 7— two offenses of rape — consecutive life sentences imposed — no error**

Where defendant was convicted of two offenses of second degree rape involving two separate victims, the trial court's imposition of a life sentence in each case, the sentences to run consecutively, was not unlawful, since the maximum statutory punishment for second degree

State v. Tolley

rape is life imprisonment, and whether sentences for separate offenses are to run concurrently or consecutively is within the sound discretion of the trial judge.

**9. Criminal Law § 103— regulating conduct and course of trial — duty of trial judge**

It is the duty of the trial judge, in the exercise of his discretion, to regulate the conduct and the course of business during trial, and the judge has the inherent power to take whatever legitimate steps are necessary to deal with an unruly, disruptive or contemptuous defendant.

**10. Constitutional Law § 30; Criminal Law § 98— shackling defendant during trial — use in extraordinary circumstances only**

The general rule is that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary instances. Shackling of defendant should be avoided because (1) it may interfere with the defendant's thought processes and ease of communication with counsel, (2) it intrinsically gives affront to the dignity of the trial process, and most importantly, (3) it tends to create prejudice in the minds of the jurors by suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion.

**11. Constitutional Law § 30; Criminal Law § 98— need for shackling defendant during trial — burden of proof**

The burden of showing the necessity for using shackles on defendant during trial rests upon the State.

**12. Constitutional Law § 30; Criminal Law §§ 98, 103— rule against shackling defendant — exceptions**

The rule against shackling is subject to the exception that the trial judge, in the exercise of sound discretion, may require the accused to be shackled when such action is necessary to prevent escape, to protect others in the courtroom or to maintain order during trial.

**13. Constitutional Law § 30; Criminal Law §§ 98, 103— shackling defendant — circumstances considered by court**

"Material circumstances" which the trial judge may consider in exercising his sound discretion to use shackles on defendant include, inter alia, the seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternate remedies.

**14. Constitutional Law § 30; Criminal Law §§ 98, 103— use of shackles — duty of court to state reasons, offer opportunity for objection**

When the trial judge, in jury cases, contemplates the necessity of employing unusual visible security measures such as shackles, he

State v. Tolley

should state for the record, out of the presence of the jury, the particular reasons therefor and give counsel an opportunity to voice objections and persuade the court that such measures are unnecessary.

**15. Constitutional Law § 30; Criminal Law §§ 98, 112— shackling defendant — jury instruction upon request**

Where the trial judge, in the exercise of sound discretion, determines that the defendant must be handcuffed or shackled, he should, upon request, instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt.

**16. Constitutional Law § 30; Criminal Law § 98— defendant tried in shackles — failure to object — no request for instruction — no denial of due process**

In a prosecution of defendant for two offenses of second degree rape upon two different individuals, the trial court did not err in allowing defendant to be tried in shackles where the court, shortly before the conclusion of the State's case and out of the jury's presence, noted for the record that he had allowed defendant to be tried in shackles because defendant apparently had attemped to escape during the preliminary hearing one month before the trial and because the sheriff recommended such restraints as a security measure; moreover, defense counsel made no objection when given an opportunity to do so by the court and made no request for an instruction to the jury to disregard the fact that defendant had been restrained with shackles throughout his trial.

DEFENDANT appeals from judgments of *Wood, J.,* 20 October 1975 Criminal Session, CASWELL Superior Court.

Defendant is charged in separate bills of indictment with (1) rape of Tracy Lee Allen and (2) rape of Karen Davis, both offenses allegedly occurring in Caswell County on 20 August 1975. Upon arraignment, the State announced that it would seek convictions only for second degree rape.

The State's evidence tends to show that Tracy Lee Allen and Karen Davis, both nineteen, were residents of Danville, Virginia. On 20 August 1975 they drove to the Lantern Restaurant on Highway 68 in Caswell County, North Carolina, one or two miles from the city limits of Danville, Virginia, arriving about 9 p.m. Defendant was there when they arrived. Both girls knew defendant on sight, having seen him at the Lantern Restaurant on several previous occasions. When they drove into the parking lot, defendant ran to their car, said a friend had driven off with his car, and asked them to take him to get it. The girls refused, saying they were going somewhere else. Defendant thereupon opened the door, said "slide over baby," and got in.

State v. Tolley

He told them he had a gun "and asked us if that made any difference." They had seen defendant with a pistol on other occasions at the Lantern Restaurant and believed he had a pistol. So, with defendant giving directions, Tracy Lee Allen drove through Danville and south on U. S. 29 and Old 29, finally leaving the paved roads and driving down a dirt road which ended at an old house. There defendant took the car keys and forced the girls to get out. He took them down a path to a clearing in the woods where he tied Karen's hands behind her back, forced Tracy Lee to undress and raped her. He told her to pray because he intended to kill the one he didn't like. Defendant then tied Tracy Lee's hands with the same two belts he had used to bind Karen and proceeded to rape Karen.

Defendant kept the girls subjugated for more than one and one-half hours, raping each of them more than once. He showed them scars he had received in prison fights, told them how rough life had treated him both inside and outside of jail, and said "he was taking it out on us." Finally, defendant produced a pack of razor blades, said he felt guilty about what he had done, intentionally cut his own arm, and told the girls to sit and watch him die. Eventually he permitted them to get dressed and all three of them returned to the car. He allowed Tracy Lee Allen to drive. Defendant was bleeding all over the car but refused to be taken to the hospital. He wanted to be taken back to the Lantern Restaurant and said he would "make up a story" that he had a knife fight with some people behind The Drifter, and he requested the girls to corroborate him. He said he would kill them if they told anyone what had happened.

They arrived at the Lantern after 11 p.m. and the girls got home after midnight. No mention was made of the incident to anyone until the following day. They discussed the matter with their boyfriends and then talked to Sheriff Poteat of Caswell County and obtained warrants charging defendant with rape.

The sheriff and SBI Agent Dorsett went to the crime scene on Friday afternoon, 22 August 1975, where they found, among other things, a belt identified as belonging to defendant (S-4), an empty Gillette stainless steel razor blade package (S-6), two paper match folders (S-7), a belt buckle (S-8), a belt loop (S-9), and an earring identified by Tracy Lee Allen as belonging to her (S-10).

Defendant did not testify as a witness in his own behalf but offered evidence through other witnesses. His mother and sisters testified that defendant never wore a belt, did not own one, and that the belt identified as State's Exhibit 4 did not belong to him.

Billy Cox testified that in a conversation with Tracy Lee Allen six days after the alleged rape, he asked her "was it true about Perry Lee Tolley raping her, and she said, No, and if I heard anybody else talking about it to tell them that it wasn't true." On rebuttal, the prosecutrix Tracy Lee Allen admitted that she made the statement because she didn't want anybody to know about it.

The jury convicted defendant of second degree rape in both cases and the court imposed a life sentence in each case, to run consecutively. Defendant appealed to the Supreme Court assigning errors discussed in the opinion.

*Clarence L. Pemberton and Melzer A. Morgan, Jr., attorneys for defendant appellant.*

*Rufus L. Edmisten, Attorney General, and Richard L. Griffin, Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

[1]  On the day before oral arguments were heard in this case, defendant's appellate counsel filed in the Office of the Clerk of the Supreme Court a written motion to amplify the record on appeal, pursuant to Rules 9(b)(6) and 37(a) of the Rules of Appellate Procedure, to include four documents, marked Exhibits A, B, C, and D, which were attached to said motion. For the reasons which follow, this motion must be disallowed.

We note initially that the portion of defendant's motion containing a recitation of fact is outside the scope of Rule 9(b)(3), which enumerates what the record on appeal in criminal cases shall contain. Moreover, that portion of the motion seeking to bring forward the pretrial orders of confinement and the post-trial order for payment of legal fees (Exhibits A, C and D) is irrelevant to the question whether defendant's motion for a continuance was properly denied. Finally, that portion of the motion referring to a statement by the jury foreman to the trial judge after the jury had been discharged, and the court reporter's affidavit in support thereof (Exhibit B), are im-

proper as an attempt to impeach the verdict with hearsay evidence based upon statements by the jurors themselves. This the law does not permit. *See State v. Hollingsworth,* 263 N.C. 158, 139 S.E. 2d 235 (1964). Defendant's motion to amplify the record on appeal is therefore denied.

The crimes in question were committed on 20 August 1975. Defendant was arrested on 22 August 1975 and a preliminary hearing was held on 19 September 1975. The Grand Jury of Caswell County returned true bills of indictment on 20 and 21 October 1975 charging defendant with rape of Tracy Allen and Karen Davis. Upon arraignment, the State announced that it would seek convictions only for second degree rape.

Prior to arraignment on 21 October 1975, defendant moved for a continuance for that both bills of indictment had been returned within one day of trial. When the motion was denied defendant's counsel stated: "Your Honor, some of the witnesses for the defendant are across the [State] line and I did not learn that they were not going to be here until this morning. Some of the brothers and sisters of the defendant, they were to be here but they are not here." The court replied, "Well, you are going to have to get them here, you have the same bridge to cross later on."

Following arraignment the cases were consolidated for trial without objection, but defendant renewed his motion for continuance until the December Term and restated the basis for it as follows: "I have been unable since the witnesses came from Virginia and since the Grand Jury brought in the second charge, I have not had time to see the witnesses. . . . " Defendant's motion was again denied with the following exchange:

"COURT: Of course the Grand Jury brought in one bill yesterday and I don't believe that you will be in any better shape in the December Term than you are now about bringing the witnesses from Virginia.

DEFENSE COUNSEL: I don't know and can't say. We can't subpoena witnesses from Virginia.

COURT: No, sir, that is correct.

DEFENSE COUNSEL: That is the situation that we are in. (Note by appellate counsel—defendant claimed to have two witnesses [women] who were out with him that night.)"

Denial of his motion for a continuance constitutes defendant's first and second assignments of error.

**[2]** It is settled law that a motion for continuance is ordinarily addressed to the sound discretion of the trial judge whose ruling thereon will not be reviewed absent abuse of discretion. It is equally well settled that if the motion is based on a right guaranteed by the federal or state constitutions, the question presented is one of law, not discretion, and the ruling of the trial court is reviewable on appeal. *State v. Brower,* 289 N.C. 644, 224 S.E. 2d 551 (1976), and cases therein cited; *State v. Miller,* 288 N.C. 582, 220 S.E. 2d 326 (1975). Here, defendant contends the trial court's ruling effectively denied him the right to offer testimony and the right to compel the attendance of out-of-state witnesses, thereby denying him "a fundamental element of due process of law" under both federal and state constitutions. *Washington v. Texas,* 388 U.S. 14, 18 L.Ed. 2d 1019, 87 S.Ct. 1920 (1967); *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296, *cert. denied* 409 U.S. 1047, 34 L.Ed. 2d 499, 93 S.Ct. 537 (1972). The question presented is therefore one of law rather than discretion. *State v. Brower, supra; State v. Phillip,* 261 N.C. 263, 134 S.E. 2d 386, *cert. denied* 377 U.S. 1003, 12 L.Ed. 2d 1052, 84 S.Ct. 1939 (1964).

**[3]** Defendant's primary contention appears to be that his motion for continuance was denied under a misapprehension of the law in that the court was unaware of the provisions of G.S. 15A-811 *et seq.* (formerly G.S. 8-65), the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, whereby witnesses residing in other states which have adopted the Act may be summoned to appear in criminal trials in North Carolina. An examination of the record demonstrates the unsoundness of this contention.

**[4]** The record clearly reflects that the trial judge was not inadvertent to the provisions of G.S. 15A-811 *et seq.* On 13 October 1975 he issued certificates pursuant to the provisions of that Act to procure the attendance at trial of three prosecution witnesses who resided in Virginia. Moreover, nothing in the record suggests that defense counsel, before moving for a continuance, had sought the court's assistance in summoning witnesses pursuant to the Act. In fact, it is not clear from counsel's remarks that he desired the court's help in that respect at the time his motion was lodged. In any event, counsel's statement in support

of his motion contain no intimation or suggestion that he could not have investigated the case, spoken to defense witnesses, arranged for their appearance in court, and generally prepared the defense during the month between the preliminary hearing and the day of the trial. *See State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520 (1948) ; *compare State v. Whisnant,* 271 N.C. 736, 157 S.E. 2d 545 (1967) ; *State v. Lane,* 258 N.C. 349, 128 S.E. 2d 389 (1962) ; *State v. Speller,* 230 N.C. 345, 53 S.E. 2d 294 (1949), *cert. denied* 340 U.S. 835, 95 L.Ed. 613, 71 S.Ct. 18 (1950) ; *State v. Farrell,* 223 N.C. 321, 26 S.E. 2d 322 (1943). Furthermore, the only absent witnesses mentioned were "some of the brothers and sisters of the defendant." No names and addresses were furnished the court; no affidavit or other proof was offered in support of the motion for a continuance, *see State v. Miller, supra; State v. Flowers,* 244 N.C. 77, 92 S.E. 2d 447 (1956) ; *State v. Gibson, supra;* and, under the circumstances, it may be assumed that absent brothers and sisters, even if present, would not have added significantly to the testimony of defendant's mother and sister who testified in his behalf. G.S. 15A-812 and 813 require a finding that the witnesses sought to be summoned are "material and necessary." All things considered, it can hardly be said *on this record* that the trial court committed prejudicial error amounting to a denial of due process in failing to continue the case so that additional members of defendant's family might be subpoenaed at witnesses for him.

The record is silent as to whether the trial judge was informed when the motion for continuance was made that "defendant claimed to have two witnesses (women) who were out with him that night." Defense counsel made no statement that he was attempting to locate the two female witnesses. If such witnesses existed, it would seem that during the month preceding the trial counsel could have procured sufficient information about them to enable him to provide the trial judge, at the time of his motion, with their names and addresses, and inform him of the nature of their testimony. "A continuance ought to be granted if there is an apparent probability that it will further the ends of justice. Consequently, a postponement is proper if there is a belief that *material* evidence will come to light and such belief is reasonably grounded on known facts. But a mere intangible hope that something helpful to a litigant may possibly turn up affords no sufficient basis for delaying a trial to a later term. [Citation omitted.]" (Emphasis added.) *State v.*

*Gibson, supra; accord, State v. Phillip, supra.* Considered in totality, the record before us does not suggest that defendant reasonably believed that *material* evidence would be brought to light by a continuance. Rather, the record suggests a natural reluctance to proceed to trial, engendered by the seriousness of the charge and lack of a substantial defense, rather than scarcity of time or absence of bona fide witnesses. *See State v. Gibson, supra.* In our view, a continuance would not have enabled defendant and his counsel to obtain additional witnesses whose testimony would have provided a stronger defense. Assignments one and two are therefore overruled.

[5]   Tracy Lee Allen testified that she and Karen Davis were examined by a doctor on Friday after they were raped on Wednesday; that the doctor was now on vacation but she had the doctor's report. Defendant's objection was sustained, whereupon the district attorney said: "I am not going to introduce it. I just wanted to show that she went to a doctor." Defense counsel replied: "I don't know if it does or not, it is two days late." By his third assignment of error defendant contends he was prejudiced by the district attorney's reference to the medical report which he knew was inadmissible. Defendant argues that the episode "communicated to the jury material [inappropriate] for jury view" and thereby excited the jurors' curiosity as to "why the doctor's report was kept from them." We find no merit in this assignment.

Defendant cites no authority for his conclusory assertion of prejudice due to juror curiosity about the contents of the medical report. While it is true that the report, assuming its contents were relevant, was apparently incompetent as hearsay, *see* G.S. 8-44.1; 1 Stansbury's North Carolina Evidence § 138 (Brandis rev. 1973) and cases cited; 3 Strong's North Carolina Index 2d, Evidence, § 29 (1967), and cases cited, defendant's objection to the challenged reference by the prosecutor was *sustained.* The district attorney himself then stated that he did not intend to introduce the report and merely wished to show that the prosecutrix had been examined by a physician—a fact to which the witness had already testified without objection. On this record defendant's contention is no more than an unsubstantiated claim of possible prejudice. This is legally insufficient to support the assignment of error. Defendant's third assignment is overruled.

**[6]**  Billy Cox, a witness for defendant, testified that Tracy Lee Allen stated to him, following the alleged rape, that defendant had not raped her. As Cox began to testify regarding his conversation with Miss Allen, the trial judge on his own motion instructed the jury as follows:

> "Ladies and gentlemen, this conversation that this witness is about to testify to, the court instructs you, you consider only for the purpose of showing that at sometime prior to the trial that this witness, Tracey Allen, made some inconsistent statement about what happened here, if you find that she did make an inconsistent statement and you will consider it for that purpose only. *What she said at the earlier time is not evidence,* it is not, well you may consider it only for the purpose of showing that it either corroborates her testimony at this trial or that she made an inconsistent statement at the earlier date and it is not substantive evidence in this trial." (Emphasis added.) EXCEPTION NO. 4

Defendant assigns as error the italicized portion of the quoted instruction, contending that the witness's prior inconsistent statement was in fact competent evidence for the purpose of impeachment and that the challenged instruction was prejudicial requiring a new trial. This constitutes defendant's fifth assignment of error.

The quoted instruction is somewhat garbled and not a model for clarity. The challenged portion in italics, standing alone, is technically erroneous, but the charge as a whole is correct. "We have said many times that a charge must be construed contextually, 'and isolated portions of it will not be held prejudicial when the charge as a whole is correct.' *State v. McWilliams,* 277 N.C. 680, 178 S.E. 2d 476 (1971)." *State v. Bailey,* 280 N.C. 264, 185 S.E. 2d 683 (1972) ; *accord, State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975) ; *State v. Lee,* 277 N.C. 205, 176 S.E. 2d 765 (1970). A disconnected portion of the charge may not be taken out of context and critically examined for an interpretation from which erroneous expressions may be inferred. *State v. McWilliams, supra; State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969). The charge of the court must be read as a whole and construed contextually, *State v. Wilson,* 176 N.C. 751, 97 S.E. 496 (1918), and if it presents the law fairly and clearly to the jury, the fact that some expressions, standing

alone, might be considered erroneous will afford no ground for reversal. *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966).

When the foregoing principles are applied to the challenged instruction, it is obvious that defendant was not prejudiced. The portions of the charge immediately preceding and immediately following the challenged italicized phrase correctly inform the jury that the prior inconsistent statement of the prosecutrix, if made, could be considered for the purpose of impeaching her testimony at trial. Moreover, the trial judge in his final charge to the jury, after speaking of the impeaching aspects of the testimony of the witness Cox, concluded: "If you believe that such earlier statement was made, that it does conflict with the testimony of the witness at this trial, then you may consider this together with all other facts and circumstances bearing on the witness' truthfulness in deciding whether you believe or disbelieve her testimony at this trial." We hold that defendant was not prejudiced by the isolated portion of the charge to which he objects. It had no prejudicial effect on the result of the trial and was therefore harmless. *State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950). This assignment is overruled.

In his brief, defendant expressly abandons his sixth and eighth assignments of error relating to the sufficiency of the evidence and to the trial court's definition of rape in his instruction to the jury. We therefore turn to the seventh assignment.

**[7]** The instruction to which defendant's seventh assignment of error is addressed appears in the record in the following form:

> "Now ladies and gentlemen, again I instruct you that what these two State's witnesses, Karen Davis and Tracey Lee Allen, told Detective Moss you will consider only for the purpose of corroborating their testimony here at this trial, if in fact you find their statement did. (What they told him on that occasion does corroborate their testimony here at this trial.)"

EXCEPTION No. 7

Defendant contends that the final sentence in parentheses constitutes an expression of opinion in violation of G.S. 1-180, was highly prejudicial, and requires a new trial. The State contends the court reporter improperly punctuated the words used by the judge and thus produced the bizarre and inaccurate result complained of. The State says and contends that the in-

State v. Tolley

struction as given should be written as follows: " . . . again I instruct you that what these two State's witnesses . . . told Detective Moss you will consider only for the purpose of corroborating their testimony here at this trial, if in fact you find their statement did—what they told him on that occasion does —corroborate their testimony here at this trial." We now consider these opposing contentions.

A careful review of the entire charge lends credence to the State's position. Immediately before the sentence in parethentheses which is the subject of Exception No. 7, the trial judge gave a proper and grammatically correct instruction concerning similar corroborative testimony of Sheriff Poteat to whom the girls had talked. With reference to Sheriff Poteat's testimony, the court said: "Again I instruct you that this statement is to be considered by you only for the purpose of corroborating the testimony of Tracey Allen and Karen Davis here at this trial, if in fact you find that what these two young ladies told the sheriff on the 21st day of August 1975 does corroborate their testimony here at this trial and for that purpose only." When the unchallenged instruction with respect to Sheriff Poteat's testimony is compared to the challenged instruction to which Exception No. 7 refers, it is apparent that when the judge strayed from his usual phraseology he corrected it by substituting for the words "their statement did" the words "what they told him on that occasion does corroborate their testimony here at this trial." When the charge is read aright so as to reflect the true meaning of what the judge actually said, it is quite apparent that the jury was told that what Karen Davis and Tracy Lee Allen told Detective Moss would be considered "only for the purpose of corroborating their testimony here at this trial, if in fact you find . . . what they told him on that occasion does corroborate their testimony here at this trial." *Cf. State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974). The jury was not misled by the slightly garbled but quickly corrected language of the trial judge and defendant suffered no prejudice. "[N]ot every . . . poorly expressed instruction by the trial judge is of such harmful effect as to constitute reversible error." *State v. Bailey, supra.* Viewed in light of all the facts and circumstances, and considering the charge as a whole, we hold that the instruction to which this assignment is addressed was not a prejudicial expression of opinion by the trial judge. Defendant's seventh assignment is overruled.

[8] Defendant was convicted of two offenses of second degree rape involving two separate victims. The trial judge imposed a life sentence in each case, the sentences to run consecutively. Defendant contends the imposition of consecutive sentences is harsh and unlawful. The action of the court in imposing them constitutes his ninth assignment of error.

G.S. 14-21(b) provides that the maximum punishment for second degree rape shall be imprisonment in the State's prison for life. Thus the imprisonment imposed in each case does not exceed the punishment authorized by law. Whether sentences for separate offenses are to run concurrently or consecutively is within the sound discretion of the trial judge. The fact that the sentences are imposed to run consecutively is not error.

We have consistently held that a sentence of imprisonment which is within the maximum authorized by statute is not cruel or unusual punishment unless the punishment provisions of the statute itself are unconstitutional. *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973); *State v. Cradle, supra,* and cases cited therein. The federal rule coincides with ours. *See Gore v. United States,* 357 U.S. 386, 2 L.Ed. 2d 1405, 78 S.Ct. 1280 (1958); *Blockburger v. United States,* 284 U.S. 299, 76 L.Ed. 306, 52 S.Ct. 180; *United States v. Pruitt,* 341 F. 2d 709 (4th Cir. 1965); *United States v. Martell,* 335 F. 2d 764 (4th Cir. 1964); *Martin v. United States,* 317 F. 2d 753 (9th Cir. 1963). And consecutive life sentences have been specifically upheld by this Court in many cases, including *State v. Mitchell, supra,* and *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966). Defendant's ninth assignment of error is therefore overruled.

This brings us to the question whether the trial judge committed prejudicial error by permitting defendant to be tried in shackles.

Shortly before the State rested its case, the jury was excused and the following exchange occurred between the trial judge and defense counsel regarding the fact that defendant was being tried in shackles:

> "COURT: Now let the record show that the Court is aware that the defendant is wearing shackles on his feet and there is no objection to that but let the record show that the Sheriff of the County asked that he be allowed to wear these things because the defendant in the preliminary

hearing, the defendant ran and that is the reason that the Court has allowed the defendant to wear shackles on his legs. Mr. Pemberton, you are not objecting to that now are you?

ATTORNEY PEMBERTON: No, sir.
EXCEPTION No. 3"

Although it is not completely clear from the record, a fair reading of the quoted passage indicates, as defendant asserts in his brief, that by order of the court defendant was restrained with leg irons for the duration of his trial. Defendant contends that this action by the trial judge rendered his trial fundamentally unfair, in that his appearance before the jury while shackled with leg irons during the entire course of his three-day trial destroyed the presumption of innocence to which he was entitled until proven guilty beyond a reasonable doubt. Thus, argues defendant, he was denied due process under the Fourteenth Amendment to the Federal Constitution and Article I, Section 19 of the State Constitution.

[9] It is the duty of the trial judge, in the exercise of his discretion, to regulate the conduct and the course of business during trial. *State v. Spaulding,* 288 N.C. 397, 219 S.E. 2d 178 (1975). Thus it is within the judge's discretion, when necessary, to order armed guards stationed in and about the courtroom and courthouse to preserve order and for the protection of the defendant and other participants in the trial. *See State v. Spaulding, supra; State v. Mansell,* 192 N.C. 20, 133 S.E. 190 (1926). Similarly, the trial judge, having the responsibility of preserving proper decorum and appropriate atmosphere in the courtroom during a trial, has the *inherent power* to take whatever legitimate steps are necessary to deal with an unruly, disruptive or contemptuous defendant. *Illinois v. Allen,* 397 U.S. 337, 25 L.Ed. 2d 353, 90 S.Ct. 1057 (1970); *accord, State v. Brown,* 19 N.C. App. 480, 199 S.E. 2d 134, *appeal dismissed* 284 N.C. 255, 200 S.E. 2d 659 (1973); *State v. Dickerson,* 9 N.C. App. 387, 176 S.E. 2d 376 (1970). However, neither our research nor that of the parties has revealed an instance in which this Court has dealt with the matter of the shackled defendant. It is this question to which we now turn.

We begin with the Due Process Clause of the Fourteenth Amendment to the Federal Constitution and the Law of the Land Clause of Article I, Section 19 of the State Constitution.

"Due process of law guarantees respect for those personal immunities which are 'so rooted in the traditions and conscience of our people as to be ranked fundamental,' *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), or are 'implicit in the concept of ordered liberty.' *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)." *Commonwealth v. Mayhugh,* 233 Pa. Super. 24, 336 A. 2d 379 (1975). Otherwise stated, "due process of law" formulates a flexible concept, the purpose of which is "to insure fundamental fairness." *See Betts v. Brady,* 316 U.S. 455, 86 L.Ed. 1595, 62 S.Ct. 1252 (1942); *accord, State v. Hedgebeth,* 228 N.C. 259, 45 S.E. 2d 563 (1947), *cert. granted* 333 U.S. 854, 92 L.Ed. 1134, 68 S.Ct. 727, *petition dismissed* 334 U.S. 806, 92 L.Ed. 1739, 68 S.Ct. 1185 (1948). Similarly, the "law of the land" requires that the administration of justice "be consistent with the fundamental principles of liberty and justice." *State v. Hedgebeth, supra.* Thus it has long been settled that "law of the land" is equivalent to "due process of law." *Smith v. Keator,* 285 N.C. 530, 206 S.E. 2d 203 (1974); *Watch Co. v. Brand Distributors,* 285 N.C. 467, 206 S.E. 2d 141 (1974); *State v. Parrish,* 254 N.C. 301, 118 S.E. 2d 786 (1961); *State v. Perry,* 248 N.C. 334, 103 S.E. 2d 404 (1958), *cert. denied* 361 U.S. 833, 4 L.Ed. 2d 74, 80 S.Ct. 83 (1959); *Eason v. Spence,* 232 N.C. 579, 61 S.E. 2d 717 (1950); *State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731 (1949); *State v. Hedgebeth, supra.*

Essential to the concept of due process is the principle that every person who stands accused of a crime is entitled to the "fundamental liberty" of a fair and impartial trial. *Estelle v. Williams,* ____ U.S. ____, ____ L.Ed. 2d ____, ____ S.Ct. ____ (1976); *Drope v. Missouri,* 420 U.S. 162, 43 L.Ed. 2d 103, 95 S.Ct. 896 (1975); *Massey v. Moore,* 348 U.S. 105, 99 L.Ed. 135, 75 S.Ct. 145 (1954); *Betts v. Brady, supra.* Likewise, it has long been recognized that "the presumption of innocence . . . is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams, supra. See Coffin v. United States,* 156 U.S. 432, 39 L.Ed. 481, 15 S.Ct. 394 (1895); *Kennedy v. Cardwell,* 487 F. 2d 101 (6th Cir. 1973), *cert. denied* 416 U.S. 959, 40 L.Ed. 2d 310, 94 S.Ct. 1976 (1974); *United States v. Samuel,* 431 F. 2d 610 (4th Cir. 1970), *cert. denied sub. nom. Samuel v. United States,* 401 U.S. 946, 28 L.Ed. 2d 229, 91 S.Ct. 964 (1971). To implement the presumption of innocence, the enforcement of which "lies at the foundation of the administration

of our criminal law," *Coffin v. United States, supra,* courts must guard against factors which may "undermine the fairness of the fact-finding process" and thereby dilute "the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970)." *Estelle v. Williams, supra.* It follows, therefore, that the presumption of innocence requires the indicia of innocence, for "regardless of the ultimate outcome, or of the evidence awaiting presentation, every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man." *Eaddy v. People,* 115 Colo. 488, 174 P. 2d 717 (1946) ; *accord, Anthony v. State,* 521 P. 2d 486 (Alaska 1974).

**[10]** Accordingly, there has evolved the general rule that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary instances. *See Snow v. Oklahoma,* 489 F. 2d 278 (10th Cir. 1973) ; *Kennedy v. Cardwell, supra; United States v. Henderson,* 472 F. 2d 556 (5th Cir.), *cert. denied* 411 U.S. 971, 36 L.Ed. 2d 694, 93 S.Ct. 2166 (1973) ; *United States v. Roustio,* 455 F. 2d 366 (7th Cir. 1972) ; *Dorman v. United States,* 435 F. 2d 385 (D.C. Cir. 1970) ; *United States v. Thompson,* 432 F. 2d 997 (4th Cir. 1970), *cert. denied* 401 U.S. 944, 28 L.Ed. 2d 226, 91 S.Ct. 955 (1971) ; *United States v. Samuel, supra; Woodards v. Cardwell,* 430 F. 2d 978 (6th Cir. 1970), *cert. denied* 401 U.S. 911, 27 L.Ed. 2d 809, 91 S.Ct. 874 (1971) ; *Loux v. United States,* 389 F. 2d 911 (9th Cir.), *cert. denied* 393 U.S. 867, 21 L.Ed. 2d 135, 89 S.Ct. 151 (1968) ; *Way v. United States,* 285 F. 2d 253 (10th Cir. 1960) ; *Odell v. Hudspeth,* 189 F. 2d 300 (10th Cir.), *cert. denied* 342 U.S. 873, 96 L.Ed. 656, 72 S.Ct. 116 (1951) ; *Blaine v. United States,* 136 F. 2d 284 (D.C. Cir. 1943) ; *Anthony v. State, supra; People v. Harrington,* 42 Cal. 165, 10 Am. Rep. 296 (1871) ; *Eaddy v. People, supra; Shultz v. State,* 131 Fla. 757, 179 So. 764 (1938) ; *People v. Boose,* 33 Ill. App. 3d 250, 337 N.E. 2d 338 (1975) ; *Blair v. Commonwealth,* 171 Ky. 319, 188 S.W. 390 (1916) ; *People v. Thomas,* 1 Mich. App. 118, 134 N.W. 2d 352 (1965) ; *Commonwealth v. Brown,_____* Mass._____, 305 N.E. 2d 830 (1973) ; *State v. Kring,* 64 Mo. 591 (1877) ; *State v. Borman,* 529 S.W. 2d 192 (Mo. App. 1975) ; *State v. Robinson,* 507 S.W. 2d 61 (Mo. App. 1974) ; *State v. Jones,* 130 N.J. Super., 596, 328 A. 2d 41 (1974) ; *State v. Roberts,* 86 N.J. Super. 159, 206 A. 2d 200 (1965) ; *People*

*v. Mendola,* 2 N.Y. 2d 270, 140 N.E. 2d 353, 159 N.Y.S. 2d 473 (1957) ; *French v. State,* 377 P. 2d 501 (Okl. Cr. 1963) ; *Commonwealth v. Mayhugh, supra: Commonwealth v. Cruz,* 226 Pa. Super. 241, 311 A. 2d 691 (1973) ; *Thompson v. State,* 514 S.W. 2d 275 (Tex. Cr. App. 1974) ; *Sparkman v. State,* 27 Wis. 2d 92, 133 N.W. 2d 776 (1965) ; Krauskopf, "Physical Restraint of the Defendant in the Courtroom," 15 St. Louis U.L.J. 351 (1971) ; Comment, "Dealing with Unruly Persons in the Courtroom," 48 N.C.L. Rev. 878 (1970) ; Note, 56 Minn. L. Rev. 699 (1972) ; Note, 8 St. Louis U.L.J. 401 (1964) ; 21 Am. Jur. 2d, Criminal Law § 240 (1965), and cases cited therein; 23 C.J.S., Criminal Law § 977 (1961), and cases cited therein; American Bar Association Project on Standards for Criminal Justice, Standards Relating to Trial by Jury § 4.1(c) (Approved Draft 1968), and comments thereto; *cf. Illinois v. Allen,* 397 U.S. 337, 25 L.Ed. 2d 353, 90 S.Ct. 1057 (1970). "The historical development of the rule that a defendant should be unfettered while standing trial, except in extraordinary instances, has been traced from Virgil and the Bible through Magna Carta and the great English legal scholars—Bracton, Coke and Blackstone—into our own jurisprudence. *See* Krauskopf, Physical Restraint of the Defendant in the Courtroom, 15 St. Louis U.L.J. 351 (1971)." *Kennedy v. Cardwell, supra.* Although the original reasons underlying the common law rule are not entirely clear, the American cases on the subject indicate that shackling of the defendant should be avoided because (1) it may interfere with the defendant's thought processes and ease of communication with counsel, (2) it intrinsically gives affront to the dignity of the trial process, and most importantly, (3) it tends to create prejudice in the minds of the jurors by suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion. *Kennedy v. Cardwell, supra; United States v. Samuel, supra; Commonwealth v. Brown, supra; State v. Roberts, supra.*

[11]     Hence, a majority of American courts agree that, in the absence of a showing of necessity therefor, compelling the defendant to stand trial while shackled is inherently prejudicial in that it so infringes upon the presumption of innocence that it "interfere[s] with a fair and just decision of the question of . . . guilt or innocence." *Blair v. Commonwealth, supra; accord. Kennedy v. Cardwell, supra; United States v. Samuel, supra.* And because of the inherent prejudice engendered by the use of

shackles, the rule since the earliest cases has been that the burden of showing necessity for such measures rests upon the State. *See People v. Harrington, supra; Blair v. Commonwealth, supra.*

To say, as a general rule, that trial in shackles is inherently prejudicial is not to conclude, however, that *every* such trial is fundamentally unfair. In certain instances, shackling the defendant may be justified, not because no prejudice is engendered thereby, but because it is shown by the State to be necessary notwithstanding any such prejudice. "[T]he right to the indicia of innocence is a relative one. . . . [I]n appropriate circumstances, [it] must bow to the competing rights of participants in the courtroom and society at large." *United States v. Samuel, supra.*

[12] Thus, the rule against shackling is subject to the exception that the trial judge, in the exercise of his sound discretion, may require the accused to be shackled when such action is necessary to prevent escape, to protect others in the courtroom or to maintain order during trial. *Kennedy v. Cardwell, supra; United States v. Samuel, supra; Commonwealth v. Brown, supra; State v. Roberts, supra.* The cases traditionally hold that accommodation between the conflicting interests of the defendant and the State with regard to the use of shackles and other physical restraints lies within the discretion of the trial judge because "[i]t is he who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes." *United States v. Samuel, supra.*

This broad discretion which is vested in the trial court is not unlimited. "The power to order a defendant to stand trial while handcuffed or shackled calls for a meaningful exercise of judicial discretion." *State v. Roberts, supra.* And sound judicial discretion means "a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. *Langnes v. Green,* 282 U.S. 531, 534, 51 S.Ct. 243, 75 L.Ed. 520 (1931). . . . [T]his requires a knowledge and understanding of the material circumstances surrounding the matter calling for the exercise of sound discretion." *Woodards v. Cardwell, supra; accord, Kennedy v. Cardwell, supra; United States v. Samuel, supra; Commonwealth*

*v. Brown, supra; State v. Roberts, supra;* ABA Project on
Standards for Criminal Justice, *supra.*

[13]    The "material circumstances" which the trial judge may
consider in exercising his sound discretion include, *inter alia,*
the seriousness of the present charge against the defendant; de-
fendant's temperament and character; his age and physical at-
tributes; his past record; past escapes or attempted escapes,
and evidence of a present plan to escape; threats to harm
others or cause a disturbance; self-destructive tendencies; the
risk of mob violence or of attempted revenge by others; the
possibility of rescue by other offenders still at large; the size
and mood of the audience; the nature and physical security of
the courtroom; and the adequacy and availability of alternative
remedies. *See Kennedy v. Cardwell, supra; Commonwealth v.
Brown, supra; State v. Borman, supra;* ABA Project on Stand-
ards for Criminal Justice, *supra.* "The information upon which
the judge acts need not necessarily come from evidence formally
offered and admitted at the trial. His knowledge may stem from
official records or what law enforcement officers have told
him. . . . It has even been said that the trial court may take
judicial notice of facts generally within the limits of his juris-
diction." *State v. Roberts, supra; accord, Comonwealth v. Brown,
supra.* However, the ultimate decision must remain with the
trial judge, who may not resign his exercise of discretion to
that of his advisors. *See State v. Roberts, supra; People v. Men-
dola, supra; Sparkman v. State, supra.*

[14]    Whatever the basis for his decision, however, the un-
questioned rule is that when the trial judge, in jury cases, con-
templates the necessity of employing unusual visible security
measures such as shackles, he should state for the record, out
of the presence of the jury, the particular reasons therefor and
give counsel an opportunity to voice objections and persuade the
court that such measures are unnecessary. While the cases have
established no definitive rule as to the exact form of evidentiary
hearing to determine whether shackling of the defendant is
necessary, the most prevalent conclusion is that the hearing
may be informal and that the ordinary rules of evidence need
not be observed, although the trial judge may decide, particu-
larly where the need for physical restraint is controverted, to
conduct a full evidentiary hearing with sworn testimony and
formal findings of fact. In any event, a record must be made
which reflects the reasons for the action taken by the court and

which indicates that counsel have been afforded an opportunity to controvert these reasons and thrash out any resulting factual questions. Only in this manner can there be preserved a meaningful record from which a reviewing court may determine whether the trial court abused its discretion. *See United States v. Samuel, supra; Commonwealth v. Brown, supra; State v. Roberts, supra; Thompson v. State, supra;* ABA Project on Standards for Criminal Justice, *supra.*

[15]   Once the decision to shackle the defendant during trial has been made by the trial court in this fashion, the cases make it clear that the judge should take all reasonable precautions to insure that the jury's deliberations and verdict remain untainted by their observations of defendant while he is so restrained. The better reasoned cases hold that "in any case where the trial judge, in the exercise of sound discretion, determines that the defendant must be handcuffed or shackled, it is of the essence that he instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt. This is the least that can be done toward insuring a fair trial." *State v. Roberts, supra; accord, Commonwealth v. Brown, supra; Commonwealth v. Cruz, supra; Thompson v. State, supra; State v. Cassel,* 48 Wis. 2d 619, 180 N.W. 2d 607 (1970). *See* ABA Project on Standards for Criminal Justice, *supra.* At the very least, it would seem that such an instruction should be given when requested. *See State v. Washington,* ﹍﹍ La. ﹍﹍, 322 So. 2d 185 (1975) ; *Commonwealth v. Marvrellis,* ﹍﹍ Mass. App. ﹍﹍, 325 N.E. 2d 295 (1975) ; *Commonwealth v. McGonigle,* 228 Pa. Super. 345, 323 A. 2d 733 (1974) ; *Commonwealth v. De-Marco,* 225 Pa. Super. 130, 310 A. 2d 341 (1973).

The propriety of physical restraints depends upon the particular facts of each case, and the test on appeal is whether, under all of the circumstances, the trial court abused its discretion. *See Kennedy v. Cardwell, supra; United States v. Henderson, supra; United States v. Samuel, supra; Allen v. State,* 235 Ga. 709, 221 S.E. 2d 405 (1975) ; *Commonwealth v. Brown, supra; State v. Borman, supra; State v. Roberts, supra; Flowers v. State, supra.*

Applying the stated principles to the case at bar, the question for decision boils down to this: On the basis of the record before us, can we say, as a matter of law and with "definite

and firm conviction," that "the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors"? *In re Josephson,* 218 F. 2d 174 (1st Cir. 1954) ; *accord, Kennedy v. Cardwell, supra.* For the reasons which follow, the answer is no.

**[16]** The record in the instant case reveals no mention of defendant's shackled condition until shortly before the conclusion of the State's case. At that time the trial judge, out of the presence of the jury, noted for the record that he had allowed defendant to be tried in shackles because defendant apparently had attempted to escape during the preliminary hearing one month before the trial and because the sheriff recommended such restraints as a security measure. Defense counsel, when asked by the court if he had any objection, replied, "No, sir."

This exchange, brief though it is, indicates that the trial judge in this instance did in fact exercise his discretion in ordering defendant to be shackled to prevent the possibility of another attempted escape. While we think the better practice would have been to resolve the matter of shackles before the trial began, there is nothing in the record to indicate that defense counsel was not afforded an opportunity before trial to controvert the fact of defendant's previous attempt to escape and to persuade the court that shackles were unnecessary. In fact, the record shows that counsel declined the judge's express invitation to do so when the matter first arose after trial had begun. Moreover, in addition to the uncontroverted fact of defendant's prior escape attempt, the court, in making its decision, also had before it the facts that defendant was a twenty-five-year-old male, in apparent good health and physical condition, who was charged with two rapes, and that the sheriff, charged with the custody of defendant during the trial, was of the opinion that shackles were necessary. Furthermore, although it is possible, as defendant suggests, that any necessary security precautions might have been accomplished by the use of armed guards rather than shackles, the record reflects that defense counsel at no time suggested any such alternative measures. In fact, the need for shackles as opposed to some less restrictive means of security was not controverted. And since defendant stated that he had no objection and did not seek to challenge the court's action or the reasons for it, we cannot say that the court abused its discretion in failing to conduct a hearing *ex mero motu.* The record reveals *some reasonable basis* upon which the judge concluded,

State v. Tolley

in the exercise of his sound discretion, that it was necessary to leave defendant shackled during his trial. *See Commonwealth v. Chase,* 350 Mass. 738, 217 N.E. 2d 195, *cert. denied* 385 U.S. 906, 17 L.Ed. 2d 137, 87 S.Ct. 222 (1966) ; *People v. Mendola, supra.* Accordingly, we cannot say, as a matter of law, that the trial judge abused his discretion in this instance.

Likewise, defendant's contention that the trial judge erred in failing to instruct the jury to disregard the fact that defendant had been restrained with shackles throughout his trial cannot be sustained. While such an instruction would have been advisable, *see Commonwealth v. Brown, supra; State v. Roberts, supra; Thompson v. State, supra;* ABA Project on Standards for Criminal Justice, *supra,* we decline to hold that the trial judge committed prejudicial error in failing to give such an instruction on his own motion when none was requested by defendant. Defendant's failure to request appropriate cautionary instructions at trial had the effect, under the circumstances shown, of waiving as a basis for appeal the oversight of the trial judge now complained of. *See State v. Washington, supra; Commonwealth v. Marvrellis, supra; Commonwealth v. McGonigle, supra; Commonwealth v. DeMarco, supra.*

Finally, we are of the opinion that defense counsel's failure to object to the shackling, even when explicitly asked about it by the trial judge, waived any error which may have been committed. The general rule in non-capital cases is that "an objection not made in apt time is waived." *State v. Davis* and *State v. Fish,* 284 N.C. 701, 202 S.E. 2d 770, *cert. denied* 419 U.S. 857, 42 L.Ed. 2d 91, 95 S.Ct. 104 (1974) ; *accord, State v. Strickland,* 290 N.C. 169, 225 S.E. 2d 531 (1976). *See also* Rule 10, North Carolina Rules of Appellate Procedure, 287 N.C. 671 (Appendix 1975). And this is true even though the error alleged on appeal but not objected to below involves a constitutional right. *United States v. Indiviglio,* 352 F. 2d 276 (2d Cir. 1965), *cert. denied* 383 U.S. 907, 15 L.Ed. 2d 663, 86 S.Ct. 887 (1966) ; *accord, Estelle v. Williams, supra.* If defendant has an objection, he has an obligation to call the matter to the court's attention so that the trial judge may, if necessary, remedy the situation. "Any other approach would rewrite the duties of trial judges and counsel in our legal system." *Estelle v. Williams, supra. See State v. Strickland, supra.* Considering the instant case in light of these principles, we believe the better-reasoned rule is that defendant, while ordinarily con-

stitutionally entitled to appear at his own trial free of shackles, must, when shackling is suggested, object to the proposed restraint and, absent reasonable excuse therefor, failure to do so will ordinarily preclude the shackling as an issue on appeal. *See Flowers v. State, supra.*

*Estelle v. Williams, supra,* decided 3 May 1976, involved the analogous issue of trial in prison garb. The United States Supreme Court held in that case that, although a criminal defendant cannot be constitutionally compelled to stand trial while dressed in identifiable prison clothes, "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." To like effect is *Hernandez v. Beto,* 443 F. 2d 634 (5th Cir.), *cert. denied* 404 U.S. 897, 30 L.Ed. 2d 174, 92 S.Ct. 201 (1971), in which the 5th Circuit, in denying appellee's petition for rehearing, stated: "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." Thus, the right not be tried in any court while dressed in prison garb may be waived by failure to object at trial.

So it is here. We can only speculate whether defendant's failure to object to the shackles when afforded an opportunity to do so was a defense tactic or mere indifference. In either event, his silence negates any suggestion of compulsion and suggests that counsel either shared the view that the shackles were necessary or, as a tactical matter, felt that the sight of defendant in shackles would engender among the jurors more sympathy for defendant than prejudice against him. *Cf. Estelle v. Williams, supra.*

In summary, we hold that (1) abuse of discretion has not been shown and (2) by failing to object, defendant waived any error with respect to his shackling. Even so, security measures which are inherently prejudicial, such as shackling, should ordinarily be avoided. When necesssity dictates the use of such restraints, the trial judge should, preferably before the trial begins, place in the record in the presence of defendant and his counsel the reasons for shackling and give them an opportunity to make their objections known. A formal hearing is not required, but when the stated reasons for shackling are controverted by defendant, it would be the better practice to hold a formal voir dire and make specific findings of fact as a basis for the court's

discretionary ruling. If the court concludes in the exercise of its sound discretion that shackling is required, the trial judge should, and upon request shall, instruct the jury against bias and specifically charge that defendant's guilt should not be inferred from the fact that, as a security measure, he has been shackled during the trial. In our considered judgment these safeguards comport with due process of law which requires all courts to insure that elementary fairness toward one charged with an offense is not infringed.

Even so, "there remain competing interests and balancing forces in the administration of criminal justice. There is a line which, through a continuing process of application, marks the interests reasonably necessary to the administration of justice; and beyond which even the most unassailable individual constitutional rights cannot venture." *Commonwealth v. Mayhugh*, 233 Pa. Super. 24, 336 A. 2d 379 (1975). In our judgment the facts of this case fall behind that line. Defendant's assignment of error with respect to shackling is therefore overruled.

Every person charged with crime is "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 97 L.Ed. 593, 73 S.Ct. 481 (1953). After careful examination of the entire record we conclude that defendant has been afforded a fair trial free from prejudicial error. The verdicts and judgments must therefore be upheld.

No error.