## Commonwealth *v.* Dalton, Appellant.

Argued September 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Malvin L. Skaroff,* with him *Skaroff and Skaroff,* for appellant.

*Edward G. Biester, Jr.,* Assistant District Attorney, with him *Paul R. Beckert,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., November 15, 1962:

Joseph Dalton and Phillip Miller were separately indicted in the Court of Oyer and Terminer of Bucks

County on charges, inter alia, of burglary, larceny, and conspiracy. After a joint trial, covering three days, the jury returned verdicts of guilty. Motions in arrest of judgment and for a new trial were denied, and sentences were imposed. Each defendant has appealed, and separate orders will be required. However, the appeals raise identical issues and our opinion in this case, which is Dalton's appeal, will also apply to Miller's appeal. The factual situation appears in the following excerpt from the opinion below:

"The burglary in question occurred at the premises of the Owls Club in Perkasie, this County, between the hours of two and eight a.m. on the morning of February 12, 1960. Entrance was obtained by the forcible opening of a rear window, and the interior of the building was thoroughly ransacked. Two safes and the coin boxes of certain vending machines were broken into and rifled. One safe, located under and behind the bar, was forced open by the use of heavy instruments on the combination dial and the interior lock mechanism. Removed therefrom was the sum of approximately $1300, consisting of wrapped pennies, nickels, dimes and quarters, plus paper currency in denominations of $1, $5, $10 and $20 bills. On the front surface of the safe door and the damaged locking mechanism were impact marks or abrasions of a different color and type of paint which had been scraped thereon from the instruments used to force it open. Dusty footprints were left on the top surface of the bar, the tread of the heels being of an unusual and distinctive design; other footprints were discovered within the premises, apparently made by the conventional nonskid sole of an ordinary rubber overshoe. Attempts by a police expert to discover and record latent fingerprints were unsuccessful; however, smudge marks, indicative of the use of gloves, were noted on the safe and on a nearby light fixture which could be reached by

standing on the bar and which apparently had been tampered with.

"About 10:30 a.m. on the next day, February 13, 1960, defendants were stopped for a speeding violation by a New Jersey State Policeman on the northbound lanes of the New Jersey Turnpike between the Bordentown and Hightstown Interchanges. Upon questioning, defendants identified themselves as being from Providence, Rhode Island. The car was operated by defendant Dalton and was registered in his wife's name at a Providence address. In the trunk of the vehicle were found a valise or attache case containing $310.34 in coins, consisting of pennies, nickels, dimes and quarters, $194 of which were in wrappers, with other discarded empty wrappers also therein; two suitcases, one of which (admittedly defendant Miller's) containing a shirt in the pocket of which were 150 one dollar bills, and the other of which (admittedly defendant Dalton's) containing $110 in one dollar bills; two pairs of rubber overshoes, two pairs of work gloves (one with the knuckles cut out), a pair of work shoes (admitted by defendant Dalton to belong to him), a metal tool box containing an assortment of miscellaneous tools including a chisel, a new five pound maul type hammer with blue painted head, and a length of round iron pipe. In defendant Miller's wallet on his person, the officers discovered $292 in paper currency of denominations of $1, $5, $10 and $20; in Dalton's wallet were 10 ten dollar bills, and $132 in denominations ranging from $1 to $20 were found in his pockets.

"Defendants told the investigating officers that they had left Providence, R. I., between 8:30 and 9:00 a.m. February 12th, had gone to Harrisburg, Pennsylvania, together, and had participated in a dice game there at a bar room which they only vaguely identified; that they had slept in Harrisburg and started out for home in Providence early in the morning of the 13th and

were enroute when stopped for the speeding violation. According to the officers, defendants' only explanation for their possession of these odd amounts of money was that the same represented winnings in the dice game in Harrisburg. Dalton said that he was unemployed, but had been a former vacuum cleaner salesman, and Miller claimed that he was an unemployed construction worker. Defendants did not testify at the trial.

"A qualified chemist employed by the laboratory of the New Jersey State Police Bureau of Identification testified to his expert examination of various items of evidence. Specifically, he described his analysis of certain blue paint deposited by glancing impact blows on the door of the Owls Club safe and the dial and other lock mechanisms thereof, and expressed the expert opinion that such paint bore the same microscopic and physical properties of color, layer structure, and texture as, and in fact was the same blue paint which was on the head of the maul-hammer found in the trunk of defendant Dalton's automobile. He came to the same conclusion as to flecks of blue-green paint found on the striking surface of said maul-hammer which was the same blue-green paint as that which covered the exterior surface of the safe door. He still further expressed the opinion that certain stress marks on the interior of the end of the round iron pipe found in the car trunk corresponded with the structure of the large chisel in the toolbox likewise found therein, indicating that the pipe had been used as a lever or pry with the chisel. He further noted tiny brass particles on the tip of the steel chisel which corresponded, by spectographic analysis as to the ratio of copper to zinc in the brass alloy, with the similar ratio of the brass parts of the dial mechanism from the safe in question.

"The tread on the heels of the work shoes belonging to defendant Dalton found in the car trunk corresponded in peculiar design to those noted on the surface of

the bar at the Owls Club as described by the various witnesses and as appearing on drawings thereof made shortly after the burglary was discovered by the steward of the club and a Pennsylvania State Policeman. The surface of the soles of the rubber overshoes likewise found in the trunk of the automobile corresponded with the picture of the imprints noted at the scene of the burglary".

Appellant first contends that evidence obtained from his vehicle without a warrant, when he had been stopped for speeding, and before the arresting officer knew that any crime had been committed, or had any knowledge connecting appellant with the crime, was in violation of the constitutional prohibition against unlawful searches and seizures. This contention was not raised either before trial, during trial, or in any post-trial motion before the lower court. Matters not raised by proper post-conviction motions or considered in the court below may not be invoked on appeal even though they involve constitutional questions: *Commonwealth v. Clark*, 198 Pa. Superior Ct. 64, 181 A. 2d 859. The question whether evidence was obtained by illegal search and seizure may not be raised for the first time on appeal: *Commonwealth v. Puntari*, 198 Pa. Superior Ct. 70, 181 A. 2d 719. And see *Commonwealth v. Mancini*, 198 Pa. Superior Ct. 642, 184 A. 2d 279.

Appellant next contends that he was prejudiced by testimony that he had been identified from a police record. Officer Kitzler of the New Jersey State Police testified on cross-examination as follows: "Q. And you stated the defendants lived in Providence, Rhode Island? A. So they told me. Q. Did you check it out? A. Yes sir, and got a police report back from Providence". Appellant argues that the officer's answer was unresponsive to the question, and indicated to the jury that he had a criminal record. Where a question is put to a witness which cannot be answered as put, with-

out including in the answer a statement of fact as explanation, complaint cannot be made that the witness added the necessary explanation: *Commonwealth v. Bober*, 59 Pa. Superior Ct. 573. We agree with the court below that the officer's answer, not only was invited by the cross-examiner, but also was not prejudicial. As stated in the able opinion of Judge SATTERTHWAITE: "This answer, apparently regarded by defendants as prejudicially indicating a police record in that city, was manifestly invited, and should reasonably have been anticipated, by the very nature, as well as the ambiguous phrasing, of the question put by counsel. Common sense would indicate that an attempt by the police to 'check out' the identity and residence of the subjects of an investigation would be made through the police department of the jurisdiction to which reference was made. Moreover, such routine communication in itself carries no connotation of a criminal record".

Appellant's final contention is that the evidence was not sufficient to support his conviction. In passing upon this contention we must view the evidence in the light most favorable to the Commonwealth, in whose favor the jury's verdict resolved all controverted factual questions and the reasonable inferences to be taken from the testimony: *Commonwealth v. Pressel*, 199 Pa. Superior Ct. 16, 184 A. 2d 358; *Commonwealth v. Lees*, 199 Pa. Superior Ct. 383, 185 A. 2d 815; *Commonwealth v. DeMoss*, 401 Pa. 395, 165 A. 2d 14. Appellant points out that the evidence was purely circumstantial, and asserts that there were only two items which in any way linked him to the scene. He complains that photographs of the footprints were not produced, and takes the position that the testimony of the Commonwealth's chemist was effectively discredited. Appellant fails to consider the many other items in the imposing array of incriminating evidence, which were

accumulated and presented with commendable skill and diligence. Their combined weight and volume constitute a compelling and overwhelming indication of guilt.

The commission of, or participation in, a crime may be established solely by circumstantial evidence: *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A. 2d 421. A conviction may be sustained where the circumstances proved reasonably and naturally justify an inference of the guilt of the accused and are of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt: *Commonwealth v. Saurbaugh,* 194 Pa. Superior Ct. 346, 168 A. 2d 638. In the case at bar, the nature and manner of consideration of the various items of evidence, individually and collectively, were carefully explained to the jury. The controlling issues were submitted in a comprehensive and impartial charge, to which no exception was taken, and concerning which no complaint is here made. The record fully supports appellant's conviction.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.