Commonwealth v. McGonigle, Appellant.

346

Submitted March 27, 1974.   Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Ellen Q. Suria,* for appellant.

*Bonnie Brigance Leadbetter* and *David Richman,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 21, 1974:

This is an appeal from judgments of sentence imposed in a case in which a jury found the appellant guilty of burglary,[1] aggravated robbery,[2] and carrying a firearm upon a public street or upon public property without a license in Philadelphia.[3] Commonwealth testimony at trial was to the effect that appellant, while armed and in the company of accomplices, had entered a Philadelphia jewelry shop on March 26, 1971, had robbed the proprietress, whose wrists were taped during the course of the crime, and had escaped thereafter.

---

[1] *See* Act of June 24, 1939, P. L. 872, §901, 18 P.S. §4901, *repealed,* Act of December 6, 1972, P. L. 1482, No. 334, §5. For this offense, appellant was placed on probation for a period of 20 years following the sentence imposed for aggravated robbery.

[2] *See* Act of June 24, 1939, P. L. 872, §705, 18 P.S. §4705, *repealed,* Act of December 6, 1972, P. L. 1482, No. 334, §5. For this offense, appellant received a sentence of not less than 10 nor more than 20 years imprisonment, to be served following any other sentence then being served.

[3] *See* Act of July 30, 1968, P. L. 690, No. 228, §1, 18 P.S. §4628 (e.2), *repealed,* Act of December 6, 1972, P. L. 1482, No. 334, §5. For this offense, appellant received a suspended sentence.

The case presents three issues on appeal: whether the lower court erred in refusing to grant a mistrial when the proprietress testified that she had seen appellant's picture "in the books"; whether the lower court erred in not declaring a mistrial on the ground that members of the jury had, on two occasions, seen the appellant in manacles outside of the courtroom; and whether the lower court committed reversible error in refusing to permit appellant, at a suppression hearing, to be seated with persons of similar appearance. Because we believe that no error was committed, we affirm the judgments of sentence.

With respect to the first issue mentioned above, involving a reference to appellant's picture "in the books," a brief review of the applicable law and an examination of the context of the reference must preface a resolution of the matter. In Pennsylvania, it is the rule that an accused is not to be convicted of one crime by the use of evidence of other unrelated crimes; an inference of the commission of a crime at issue from the commission of such other crimes is proscribed. *See Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). In accordance with this rule, the Pennsylvania Supreme Court has held that "after . . . reference to a photograph [of a defendant occurs at trial] the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Id.* at 181, 292 A.2d at 375. *See Commonwealth v. Turner,* 454 Pa. 439, 311 A.2d 899 (1973). Determination of the reasonableness of such an inference of prior criminal activity necessitates an analysis of a number of factors, including the sustained or passing nature of the reference,[4] the degree of suggestiveness of a police-file source for the

---

[4] *See Commonwealth v. Craft,* 455 Pa. 616, 317 A.2d 213 (1974); *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972).

photograph,[5] the clarity or ambiguity with which the photograph is related to the defendant,[6] and the apparent thrust and purpose of the reference.[7]

It is also the rule in Pennsylvania that "[w]here a question is put to a witness which cannot be answered as put, without including in the answer a statement of fact as explanation, complaint cannot be made that the witness added the necessary explanation . . . ." *Commonwealth v. Dalton,* 199 Pa. Superior Ct. 388, 393-94, 185 A.2d 653, 656, *allocatur refused,* 200 Pa. Superior *xxxi* (1962) (testimony of police officer on cross-examination that he had received a police report from defendant's home city held invited, and hence not ground for complaint, by defense attorney's question as to whether he had checked out defendant's claim of residency).

The above-stated principles must be applied to the following facts: At a suppression hearing in the case at bar, which appellant's trial counsel participated in, the proprietress testified that on the night of the crime she had been shown pictures, pasted in a book, at a detention center, and had picked out that of the appellant. In contrast to the testimony of a police witness, she stated that she had not picked the appellant's picture out of a group of photographs brought subsequently to her home by the officer. At trial, the proprietress

---

[5] *Compare Commonwealth v. DeMarco,* 225 Pa. Superior Ct. 130, 310 A.2d 341 (1973) (reference to mug shots from known-forger file; new trial granted defendant) *with Commonwealth v. Smith,* 454 Pa. 515, 314 A.2d 224 (1973) (reference to group of nine photographs gotten together by policeman; new trial denied).

[6] *See Commonwealth v. Craft,* 455 Pa. 616, 317 A.2d 213 (1974) (statement of witness as to viewing of police photographs, unclear as to whether defendant's picture was among them; new trial denied).

[7] *Cf. Commonwealth v. Bunch,* 454 Pa. 365, 311 A.2d 632 (1973) (question by prosecution as to defendant's past carrying of razor, obviously designed to show prior crimes; new trial granted).

stated initially that she had not seen appellant's picture among those shown her on the day of the robbery, and that she had later been shown several pictures at her home, among which was appellant's. The latter pictures, it appears, were not contained in a book. Subsequent to such testimony, appellant's counsel asked the proprietress: "Now [from the time of the robbery] until today, or recently, you didn't see the defendant McGonigle again, did you?" The witness replied, "I didn't see either one of them [i.e., either appellant or his codefendant] again."

The latter remark was so clearly inconsistent with prior testimony during trial by the witness that she had seen the codefendant in lineups that the lower court repeated the question. This time the witness replied: "I saw him in the books; that's all." The lower court reiterated the witness' reference to the books, ascertained that the answer related to appellant only, and denied the motion of appellant's attorney for a mistrial.

The examination of the entire record in the present case establishes that the reference in question was of the most fleeting nature, comprising but a few words of a trial involving several hundred pages of testimony. Although the term "books", in relation to a police investigation employing photographs, may be suggestive of criminal photographic files, the significance of the reference in the present case is greatly reduced by the contradictory positions taken by the witness at trial as to appellant's implied presence in any files. Furthermore, the reference in question was entirely inadvertent, having no obviousness of purpose which might misdirect a juror's attention to an improper consideration.[8]

---

[8] Past cases in Pennsylvania which have resulted in reversal in favor of a defendant on ground of prejudicial police photographic reference have usually involved testimony of a prosecution witness on direct examination. *See, e.g., Commonwealth v. Groce,* 452 Pa. 15, 303 A.2d 917, *cert. denied,* 414 U.S. 975 (1973) ; *Commonwealth*

Perhaps of even greater importance is the fact that in view of the proprietress' suppression hearing testimony as to her identification of defendant in a book at a detention center, and in view of her generally confused statements on the subject of photographic identification, the defendant's attorney assumed a known and substantial risk of the answer ultimately received to his question, as phrased. The fact that the answer came in response to a repetition of the question does not exclude it from the ambit of the risk undertaken. As a consequence, the defendant cannot now be heard to complain of the answer invited. *See Commonwealth v. Dalton,* supra.

With respect to the second issue mentioned above, involving two alleged observations of defendant in handcuffs outside of the courtroom by juror or jurors, the following facts are pertinent: At a point during the trial, appellant's counsel informed the lower court, out of the presence of the jury, that appellant's codefendant had reported encountering a certain juror, "as [the codefendant] was manacled and being taken by the Sheriff"[9] The court responded, inter alia, that precautions were taken against such events, and that their occurrence was strictly accidental. Subsequently, and immediately prior to the lower court's instructing of the jury in the case, the codefendant's attorney stated in chambers: "We were informed once again by both defendants, on the way out after the trial they were observed in handcuffs by the elevator only about five or ten minutes after the Court recessed." The lower court replied that on the occasion in question the defendants had remained in the courtroom for at least 15 minutes after the jury had left, and that chance encounters of

---

*v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972) ; *Commonwealth v. De-Marco,* 225 Pa. Superior Ct. 130, 310 A.2d 341 (1973). The reference in the present case stemmed from a question asked by the defendant's attorney, on cross-examination.

[9] The codefendant was represented by another attorney.

the type described were not entirely avoidable.. Although appellant's attorney complained of the incident, he did not make a motion on behalf of his client regarding it; a motion by the codefendant's attorney for a "hearing . . . for a mistrial" was implicitly denied by the lower court in refusing a mistrial.

It is settled law that a mere accidental observation of a defendant in handcuffs outside of a courtroom by a juror does not, without more, require the granting of a mistrial,[10] although a cautionary instruction by the trial court in the event will be appropriate. *Commonwealth v. DeMarco,* 225 Pa. Superior Ct. 130, 310 A.2d 341 (1973). In the absence of a request for such an instruction, however, this Court has declined to grant a new trial. *Id.* The failure of appellant's attorney in the case at bar to enter a proper request on the subject in the lower court must be held to determine the issue adversely to appellant.[11]

With respect to the third issue mentioned above, involving the refusal of the lower court to permit appellant to be seated with persons of similar appearance at a suppression hearing,[12] it is conceded by defendant on appeal that there is probably no authority requiring such permission. Without intending to preclude under all circumstances relief on such an issue, we are unable to discern any merit in the defendant's position in the case at bar.

Judgments of sentence affirmed.

---

[10] *See Commonwealth v. Carter,* 219 Pa. Superior Ct. 280, 281 A.2d 75 (1971).

[11] It should also be noted that there is no evidence of record that the appellant was personally involved in the first incident complained of.

[12] The purpose of the request at the suppression hearing by appellant's counsel in this regard appears to have been to test the ability of the proprietress to identify his client, in a situation not suggestive of guilt, and to avoid any enhancement of her ability to identify him.