382 A.2d 1191

**COMMONWEALTH of Pennsylvania**

v.

**Odell McDUFFIE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 23, 1976.

Decided Jan. 26, 1978.

Charlotte A. Nichols, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Bonnie B. Leadbetter, Asst. U. S. Atty., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Odell McDuffie, was tried before a judge and jury and convicted of murder in the second degree. Postverdict motions were denied and sentence of ten to twenty years imprisonment was imposed. This appeal followed.

Appellant contends that the trial court erred in not granting his motion to strike certain testimony given on cross examination by a prosecution witness. This testimony was to the effect that appellant had previously been convicted of another homicide. We agree and therefore reverse the judgment of sentence and grant a new trial.

The prosecution's evidence at trial established that during the early evening of June 25, 1973, appellant and one Alvin Jordan confronted the decedent and a companion on the street in Philadelphia. The victim and his companion were sitting on some steps adjacent to the sidewalk when appellant and Jordan pulled up in a car, and, according to the testimony of the prosecution witnesses, appellant shot and fatally wounded the decedent as he attempted to escape by running up the street.

The prosecution called Alvin Jordan, appellant's companion and driver of the car at the time of the incident, who testified that at approximately 8:30 p. m., on June 25, 1973, he was approached by appellant who asked him for a ride up 20th Street. Jordan testified that he drove appellant to Christian Street and stopped the car in front of appellant's house while appellant went inside. Appellant then returned to the car and told Jordan to "go around the corner." Following appellant's instructions, Jordan went to 19th Street and Katherine Street where they met a third party,

one Fred Simms. Together Jordan, Simms, and appellant drove to Colorado Street and at that point Jordan noticed that appellant had a pistol. Again following appellant's instructions, Jordan drove down the street and stopped in front of a house where some people were sitting on the steps. Jordan testified that appellant and Simms who were both armed, got out of the car and began "pistol whipping the boys with the guns." Jordan testified that as the boys attempted to escape by running across and down the street, he saw appellant firing shots. After the shooting appellant and Simms got back in the car and left the scene, Jordan stating that he complied with appellant's requests to drive away because he was afraid that if he did not comply he would be shot.

During the cross-examination of Jordan, defense counsel sought to establish that Jordan was presently incarcerated as the result of a series of robbery charges having been filed against him, and that he was awaiting disposition on these charges. The defense elicited testimony which indicated that the district attorney's office had told Jordan that it would recommend a lesser sentence on several of these open robbery indictments in exchange for Jordan's testimony in this case against the appellant. In the course of this cross-examination, Jordan responded to one of defense counsel's questions by mentioning that appellant had received probation for a prior homicide in which appellant was involved. Such a reference to appellant's prior criminal conduct is highly prejudicial. *Commonwealth v. Roman,* 465 Pa. 515, 351 A.2d 214 (1976).

Defense counsel immediately requested to have Jordan's answer stricken. This motion was denied with the court making the following observation:

"You asked for the conversation. You may not like the answers, but he is trying to answer you."

The trial court's denial of defense counsel's motion to strike was reversible error.

In general, a party is not entitled to have stricken incompetent evidence which that party elicits. We are of

the opinion, however, that the instant case is not within the proscription of that rule. The response made by the witness to defense counsel's questioning here cannot be said to have been elicited by defense counsel. In cross-examining Jordan, defense counsel made clear on several occasions that inquiry was being made about Jordan's problems with the district attorney and not about appellant's. The following questions were asked by defense counsel before the question which resulted in the reference to appellant's prior criminal conduct:

Q. Did you discuss *your particular circumstances* in any way with the District Attorney at that time? (Emphasis added.)

A. I can't answer that.

.        .        .        .        .

Q. I just wish to ask what else, *as far as your circumstances were concerned, as far as the line of robberies that you had on you, whatever*—what else, *aside from Odell McDuffie's problem,* did you discuss with the District Attorney, in reference to *your own problem*? (Emphasis added.)

. .        .        .        .

Q. Now, you say that you came down—spoke with the District Attorney on two separate occasions, is that correct?

A. Right.

Q. Now, *aside from Mr. McDuffie's problem,*—and you have already acknowledged that you have an interest in truth and justice prevailing.

*Aside from that, sir,* what did you discuss with the District Attorney, *as concerns your own particular problems,* which also necessitate truth and justice?

[ASS'T. DISTRICT ATTORNEY]: I'm going to object, your Honor, unless counsel is more specific to which time. There's two interviews.

[THE COURT]: I thought we had that straightened out. Will you give him a chance to answer and try to keep your questions to the point?

[DEFENSE COUNSEL]: Okay. Fine.

[BY DEFENSE COUNSEL]:

Q. We will start with the first contact you had with a member of the District Attorney's office. On that occasion, aside from discussing the shooting and killing of George Rodgers, *what did you discuss, with reference to your problem*?

A. I didn't discuss nothing as far as my robberies are concerned. As far as Odell is concerned, yes, I discussed it. My lawyer told me—I told him what happened and after Odell told me that the boy died, you know, and being as though Odell beat—*or got a probation of a homicide later on,* I feel as though he can't handle this one. (Emphasis added.)

[DEFENSE COUNSEL]: I request to have that stricken, your Honor.

[THE COURT]: Overruled.

[DEFENSE COUNSEL]:

Q. Now, will you try to be responsive?

[THE COURT]: You asked for the conversation. You may not like the answers but he's trying to answer you.

[DEFENSE COUNSEL]: Right. I was asking not with reference to what he discussed about Odell McDuffie. My specific question was what he discussed about his own circumstances.

Now, he has indicated that he had a string of robberies on him.

The record does not indicate the witness was responsive to defense counsel's question. Defense counsel instructed the witness on several occasions to restrict his answers to the discussions he had with the district attorney's office regarding the series of robbery indictments pending against him. Nevertheless, Jordan responded by testifying as to matters well beyond the scope of defense counsel's question.

In *Commonwealth v. Beach,* 445 Pa. 257, 284 A.2d 792 (1971), the trial judge refused to grant defense counsel's motion for a mistrial made after the following occurred on cross-examination of a prosecution witness:

"Q. Do you remember testifying in a trial against Mr. Beach on either February 25, or 26 of last year?

A. Which one? The one in which he was convicted?"

In response to appellant's argument that the trial judge erred in refusing to grant the mistrial request following the above question and answer, we observed,

> "[a]lthough the trial court denied the mistrial motion, it ordered the witness' response stricken from the record, and admonished the jury to disregard it. Appellant asserts, nevertheless, that this disclosure of his conviction in a previous trial, made in the presence of the jury, caused him such irreparable harm that it could not be cured by the court's admonition and that the refusal to grant a motion for mistrial was an abuse of discretion. We cannot agree. Viewing the record in its entirety, we are persuaded that the prompt and explicit statement by the trial judge to the jury minimized any prejudice which might otherwise have resulted." (Emphasis added.)

445 Pa. at 259, 284 A.2d at 793. See also United States v. Iannelli, 477 F.2d 999 (3d Cir. 1973).

Rather than respond in the off-hand manner in which it did, the trial court in the instant case should have granted defense counsel's motion to strike, and should have admonished the jury to disregard the witness's gratuitous statement regarding the alleged prior criminal activity of appellant.

■ Appellant also contends that the evidence was insufficient to prove his guilt of murder in the second degree beyond a reasonable doubt. We have examined this issue and find it to be without merit. Because we reverse and remand for a new trial, we need not now consider the other issues raised.

Judgment of sentence reversed and a new trial granted.

NIX, J., concurs in the result.

POMEROY, J., filed a Dissenting Opinion in which EAGEN, C. J., and LARSEN, J., joined.

328

POMEROY, Justice, dissenting.

Appellant Odell McDuffie, appealing from a conviction of murder of the second degree, contends that the trial court committed reversible error in denying his motion to strike certain testimony given on cross-examination by a prosecution witness. The majority agrees, reverses the judgment and remands for a new trial. I respectfully dissent.

The allegedly damaging testimony appears at the end of the following portion of the cross-examination by the defense of one Alvin Jordan, called as a witness for the Commonwealth:

By Miss Nichols [Attorney for the defense]:

Q Now, aside from Mr. McDuffie's problem.—and you have already acknowledged that you have an interest in truth and justice prevailing.

Aside from that, sir, what did you discuss with the District Attorney, as concerns your own particular problems, which also necessitate truth and justice?

MR. STRAUSS [Assistant District Attorney]: I'm going to object, your Honor, unless counsel is more specific to which time. There's two interviews.

THE COURT: I thought we had that straightened out. Will you give him a chance to answer and try to keep your questions to the point?

MISS NICHOLS: OK, Fine.

By Miss Nichols:

Q We will start with the first contact you had with a member of the District Attorney's office. On that occasion, aside from discussing the shooting and killing of George Rodgers, what did you discuss, with reference to your problem?

A I didn't discuss nothing as far as my robberies are concerned. As far as Odell is concerned, yes, I discussed it. My lawyer told me—I told him what happened and after Odell told me that the boy died, you know, and being as

though Odell beat—or got a probation of a homicide later on, I feel as though he can't handle this one.

MISS NICHOLS: I request to have that stricken, your Honor.

THE COURT: Overruled.

BY MISS NICHOLS:

Q  Now, will you try to be responsive?

THE COURT: You asked for the conversation. You may not like the answers but he's trying to answer you.

The general rule, as the Court acknowledges, is that a party is not entitled to have stricken incompetent testimony which that party elicits. The Court then concludes that the instant case is not within the proscription of the rule because the witness Jordan's testimony was unresponsive, was not elicited by defense counsel and was "well beyond the scope of defense counsel's question." Opinion of the Court, ante. at 326.

The view of the trial judge, in contrast, was that the witness was responsive and was, in the face of frequent interruption by defense counsel, attempting to answer questions put to him which were hardly "clear." * After reviewing the record, I am obliged to agree, and cannot accept the sweeping statement of the majority opinion that Jordan's testimony was "well beyond" the scope of the questioning. Rather, the witness' answer was arguably elicited by the defense questions and the defendant should not now be heard to complain. See, e.g., *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971). I find no reason to make exceptions to the normal rule that incompetent testimony elicited here by defense counsel will not be sanctioned.

* The cross-examination of the witness Jordan, up through the point of the challenged exchange, occupies a scant twelve pages [N.T.  to  ] out of a trial transcript of some 739 pages reflecting four days of trial. In those twelve pages of cross-examination, the record shows, the trial judge three times requested that defense counsel keep her questions "to the point" and cease interrupting the answers of the witness. Furthermore, the trial judge also three times stated his belief that the witness was, in fact, attempting to answer counsel's questions.

In addition, the record does not support the Court's paraphrase of Jordan's testimony as being "to the effect that appellant had previously been *convicted* of another homicide." (At p. 323; my emphasis). What Jordan said was that appellant "beat or got a probation of a homicide later on." It is not semantic quibbling to emphasize that the import and seriousness of the two versions are not the same. At best, the admitted remark indicates that appellant had *not* been convicted of a previous homicide; at worst, that appellant had received probation, presumably pursuant to the acceptance of some sort of guilty plea.

It should be noted furthermore that at no time did defense counsel request cautionary instructions or renew her motion to strike the answer upon which the Court today reverses. While I concede that a better response on the part of the trial judge would have been to strike the testimony and give cautionary instructions concerning it, I cannot agree that the degree of prejudice to appellant is so severe as to warrant reversal. Viewing the record as a whole, I find the error harmless beyond a reasonable doubt. See *Commonwealth v. Stanton Story*, 476 Pa. 391, 383 A.2d 155.

As I am in agreement with the majority that the evidence adduced at trial was sufficient to sustain a conviction of murder of the second degree, I would affirm the conviction.

EAGEN, C. J., and LARSEN, J., join in this opinion.