407 A.2d 1311

**COMMONWEALTH of Pennsylvania**

v.

**Ben DURANT, Appellant.**

Superior Court of Pennsylvania.

Submitted March 12, 1979.

Decided July 26, 1979.

Petition for Allowance of Appeal Denied Nov. 26, 1979.

Robert N. Tarman, First Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before SPAETH, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

This is an appeal from the Judgment of Sentence of the Court of Common Pleas, Criminal Division, of Dauphin County, imposed at No. 499 of 1977. The procedural history and facts relevant to the issue on appeal are as follows:

On March 12, 1977, appellant visited his nephew, John Tate, and his family consisting of a wife Laura, and two children. During the afternoon and evening, appellant and John Tate visited with several of the Tates' neighbors.

Laura Tate related that during the evening, appellant returned alone from a neighbor's residence and used the bathroom on the second floor. The Tates' oldest daughter, Tanya, testified she saw appellant entice her younger sister, Lanita, from the bedroom and take her to the bathroom where he had her commit an act of fellatio upon him.

During cross-examination of Laura Tate, a Commonwealth witness, defense counsel was attempting to show that Laura was informed by her daughter of the aforementioned acts on the same night, but did not confront appellant, nor report the incident to the police until later the next day.

During the line of questioning, the following colloquy took place:

Q. You knew where Ben lived, didn't you? You knew he lived out in Bressler?

A. Yes, but I didn't know he was here in the city. I didn't know he was here. I didn't know he was out of jail, really. I didn't know he was here until I seen him in my house. (T. 77)

Defense counsel immediately motioned the court for a mistrial which was denied. Defense counsel then refused the court's offer of curative instructions.

Based upon the aforementioned evidence, appellant was convicted by a jury of involuntary deviate sexual intercourse. Subsequent to the denial of post-trial motions, appellant was sentenced to four to twelve years incarceration. This timely appeal followed.

Appellant contends the trial court abused its discretion in refusing the motion for a mistrial.

We note that the response of Laura Tate can not be said to have been elicited by defense counsel. Her response could only result from a strong desire on her part to convict the appellant. Such a reference to appellant being in jail served only to convey to the jury the fact that appellant had been convicted of a crime in the past. A reference to prior criminal conduct is highly prejudicial to the appellant serv-

ing to effectively strip him of the presumption of innocence. *Com. v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976); *Com. v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973).

The conduct of a fair trial cannot permit such testimony by a Commonwealth witness. It demonstrated her animosity towards the appellant. This is understandable as the witness was the mother of the four-year old girl involved. However, the reference to appellant's prior criminal record is prejudicial to the presumption of innocence. *Com. v. Roman* (supra). We note this case is distinguishable from *Com. v. Whitman*, 252 Pa.Super. 66, 380 A.2d 1284 (1977) and *Com. v. Cannon*, 453 Pa. 389, 309 A.2d 384 (1973). The defense witnesses involved in those cases had no motive for intentionally testifying unresponsively and contra to the defendant's interests.

The further issue to be resolved is whether or not this is the type of prejudicial testimony which could have been cured by prompt curative instructions by the court. Because of the nature of the testimonial reference, we find that curative instructions would have been inadequate. *Com. v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977); *Com. v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975). The jury had to decide the issue of guilt or innocence based upon credibility. It is to be regretted that we have no choice but to find that the failure to declare a mistrial was reversible error. *Com. v. McDuffie*, 476 Pa. 321, 382 A.2d 1191 (1978).

Accordingly, the judgment of sentence is reversed and a new trial granted.

SPAETH, J., files a concurring opinion.

MONTGOMERY, J., files a dissenting opinion.

SPAETH, Judge, concurring:

As the respective opinions of Judge HESTER and Judge MONTGOMERY show, the issue in this case is whether defense counsel did or did not elicit Laura Tate's response—which both judges agree was prejudicial. To resolve this issue, the testimony immediately preceding the objectionable response must be considered. It was as follows:

Q. And then it is your testimony that after you got all the girls downstairs, then a minute or two later Ben left the bathroom and he came down? He came downstairs then?

A. I wouldn't recall, a minute or two. I—

Q. A short period of time?

A. Because I am not keeping up with all the times but things were still in progress, that's for sure.

Q. And you and Ben walked together up to the neighbor's house to get your husband?

A. Yes.

Q. And I believe Ben knocked on the door?

A. I went first, I knocked on the door.

Q. So am I correct in saying that you or your husband, John, never confronted Ben with this that night, did you?

A. No, no. You mean—no.

Q. When did you finally call the police?

A. I think the Sunday morning, called the detectives.

Q. You waited until the next morning. I believe it was about noon the next day until you call the police?

A. Detective, yes, um-hum. I told my husband, John, to call them.

Q. He didn't do it?

A. Wouldn't call, um-hum. I often wondered why, but I don't know.

Q. Who did finally call the police?

A. Mrs. Matthews, the little blind girl's mother, she is the one who helped me out to hire the detective.

Q. You knew where Ben lived, didn't you? You knew he lived out in Bressler?

A. Yes, but I didn't know he was here in the city. I didn't know he was here. I didn't know he was out of jail, really. I didn't know he was here until I seen him in my house.

Appellant's motion for a mistrial followed. After it was denied, the witness was dismissed without further questioning. It should also be noted that the last question was the only question concerning the witness's knowledge of appellant's address.

In these circumstances I concur in Judge HESTER's opinion that defense counsel did not elicit the objectionable response. I also concur that the prejudice may not be considered harmless; the only witness to the crime was a 7 year old sister of the victim.

MONTGOMERY, Judge, dissenting:

I cannot agree with the majority decision in this case because I do not find any abuse of discretion on the part of the trial court in denying appellant's motion for a mistrial and therefore dissent.

While agreeing that the introduction of evidence of prior criminal conduct by the Commonwealth or the court can be highly prejudicial and may necessitate the grant of a new trial, this is not the situation presented by the instant case. Rather, the more narrow inquiry is whether defense counsel's questioning of the witness on cross examination elicited the response received, such that he should be precluded from relying on any prejudicial effect thereof on appeal. The case of *Commonwealth v. Dalton*, 199 Pa.Super. 388, 185 A.2d 653 (1962), and its progeny is controlling on this issue.

In *Dalton*, a police officer on cross examination by defense counsel was asked whether he had verified defendant's statements as to their place of residence, and the officer replied that he had gotten a police report from the city where they resided. The defendant then claimed that he was prejudiced by the officer's testimony to the effect that he had a police record. The court held the defendant's claim to be without merit in that the witness's answer was invited by the cross examiner. Also see *Commonwealth v. McGonigle*, 228 Pa.Super. 345, 323 A.2d 733 (1972).

Also, in *Commonwealth v. Hill*, 237 Pa.Super. 543, 353 A.2d 870 (1975), allocatur refused, in response to questioning by defense counsel, a witness testified as follows:

"Q. Did you have occasion to speak with either of these gentlemen over the phone?

A. Yes, sir, I had a phone call.

Q. You had a phone call. Who was that call from?

A. He said it was Burgess.

Q. Burgess?

A. He said he was out of jail."

In finding for the court that the motion for a mistrial had been properly denied, Judge Spaeth stated:

Appellants contend that this was an unsolicited answer that indicated that Burgess had been in jail at some time for the commission of another crime. If Molettiere's answer had been to a question posed by the Commonwealth, the issue of mistrial would have been troublesome. However, the answer was to a question by the defense, and it is by no means clear that it was unsolicited. Molettiere might easily have understood the last question, "Burgess?", as challenging the accuracy of his immediately preceding answer. In fact, unless counsel had not heard the answer, no other reason for asking "Burgess?" is apparent. On this understanding the witness might naturally reply by supporting his identification by quoting what the person with whom he had been talking had said.

In the instant case, the majority finds that the witness's response merely demonstrated her animosity toward the appellant. There is no question but that the mother of the four year old victim would be hostile to appellant. Defense counsel was clearly aware of this, and should have been as cautious as reasonably possible in his questioning on cross examination as a matter of simple trial strategy. The burden is clearly on defense counsel to prove that the response received from the witness was not elicited by his question. Based on the record before us, it is conceivable that the witness's response was solicited by the question asked in that if the appellant had been incarcerated for a period of time, his residence very likely might have changed. There was extensive cross examination of this witness and

her testimony was being challenged, therefore, any attempt on her part to explain her responses is understandable. Unexpected or unfavorable answers given by a witness on cross-examination can not, without more, warrant the grant of a motion for a mistrial.

It is also noted that defense counsel, herein, at the time of his motion refused the court's suggestion for curative instructions. I disagree with the majority that curative instructions would have been inadequate, and find, rather, that such a cautionary measure would have been sufficient to expunge any taint and insure appellant a fair trial. See *Commonwealth v. Rhodes*, 250 Pa.Super. 210, 378 A.2d 901 (1977) and *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977).

The evidence of appellant's guilt has been otherwise unquestioned, and I therefore find the grant of a new trial by the majority unwarranted, and would affirm the judgment of sentence.