418 A.2d 399

**COMMONWEALTH of Pennsylvania**

v.

**Otto Martin JENSCH, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1979.

Filed Jan. 11, 1980.

Terry L. Parish, Boyertown, for appellant.

J. Michael Morrissey, District Attorney, Reading, submitted a brief on behalf of Commonwealth, appellee.

Before HESTER, HOFFMAN and CATANIA, JJ.*

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

CATANIA, Judge:

The appellant in this matter was convicted before a jury of possession of marijuana with intent to deliver and delivery of a controlled substance, that substance being marijuana. The defendant/appellant has assigned three points which he considers error. We believe the first two points are without merit and will discuss them first.

The defendant's first assignment of error is that the verdict of the jury was contrary to the weight of the evidence. More specifically, the defendant believed that his defense of entrapment should have been accepted by the jury. The second assignment of error alleged by the defendant is that the lower court erred in failing to sustain the defendant's motion to suppress evidence. The defendant believes that the Court should have suppressed statements made by the defendant to an undercover agent, which statements were made to the undercover agent prior to the defendant's realizing that he was, in fact, an undercover agent.

The facts are that a girl by the name of Janice Miller was a rather zealous individual who was cooperating and apparently continues to cooperate with law enforcement officers in attempting to have various persons arrested for selling drugs. Janice Miller was not a member of any law enforcement agency. Nor was Janice Miller a paid informant. Janice Miller knew the defendant for approximately two years prior to his arrest. She admitted that she had smoked marijuana with the defendant in the past and she apparently also believed that the defendant was a fairly large dealer in marijuana. Janice Miller intentionally introduced the defendant to Deputy Sheriff Rentschler for the purpose of having Rentschler investigate the defendant and subsequently charge him for certain crimes. There were numerous conversations between Rentschler and Jensch prior to a final deal whereby Jensch sold Rentschler twenty-five (25) pounds of marijuana.

A review of the record makes it quite clear that Jensch was not a person who was not already inclined to sell marijuana. The relevant provision of the Crimes Code, Section 313 (18 Pa.C.S.A. 313) provides as follows:

(A) General Rule—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or,

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

■ A complete reading of the transcript which has been provided makes it clear that the defendant was not a person who is led by the police or by Janice Miller to sell drugs. He was a person who had already been selling drugs and who had been selling large quantities of drugs, meaning marijuana, prior to the police ever meeting him. All the police did in this matter was to work very diligently to make sure that Jensch sold them a large quantity of marijuana rather than just a small amount. Nor can it be said that what statements were made to the undercover agents in an attempt to work out a deal for the sale of the marijuana to them should have been suppressed. The undercover agents must be given some latitude to continue to represent the interest of the people of this Commonwealth and therefore this second argument of the defendant is overruled.

■ In his third assignment of error, the defendant alleges that during Deputy Rentschler's testimony, he stated that the defendant told him that he was engaged in drug dealings while in college. The defendant alleges that this testimony of prior criminal activity was so prejudicial that the defendant was deprived of his right to trial by an impartial jury. It is noted in the briefs that during the suppression

hearings, although the judge did not suppress the statement, the district attorney and the attorney for the appellant both agree that the police officer should not testify as to the above statement. However, during his testimony, Deputy Sheriff Rentschler managed to get the statement into testimony almost above the objection of the district attorney. Deputy Sheriff Rentschler first describing what happened on the night of the transaction. He stated that the defendant, himself and another detective were in a room and that the defendant pulled out a plastic baggie out of his coat pocket and asked for a telephone book so that he could cut the marijuana so that the other parties could test it. After discussing how he rolled the cigarettes, he was asked by the district attorney if he had any conversation with the defendant. The Deputy Sheriff then responded as follows:

"It was mostly talk about drug transactions. He told me how he went through college . . ."

The district attorney immediately interrupted him and the attorney for the defendant objected and asked for a side bar conference. At the side bar conference, the judge, after having the statement reread, stated that he was denying the motion for a mistrial and stated that as he reads the record, he does not believe that there is any indication as to how the defendant went through college. He felt that the defendant merely stated something about having gone through college. We have read the statement and the record and must disagree with the lower court. We believe that the only inference that could be drawn from the statement made by the Deputy Sheriff was that there were many drug transactions engaged in by this defendant while he was in college. It may not necessarily be that the jury would draw the inference that the defendant actually worked his way through college by selling marijuana, but it is quite clear to us that the jury should have inferred that the defendant engaged in at least some drug transactions while in college.

In *Commonwealth v. Harkins*, 459 Pa. 196, 328 A.2d 156, the Supreme Court of Pennsylvania stated:

The only arguments raised by the prosecution in this appeal concern the issue of harmless error. Initially, we must reject the prosecution's contention that it should not be required to establish that the error was harmless beyond a reasonable doubt. Under the Sixth Amendment to the United States Constitution and under Article I, Section 9 of the Pennsylvania Constitution, P.S., the appellant was entitled to a trial by an impartial jury. Since these rights were violated, the prosecution had the burden of proving that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, reh. den. 386 U.S. 987, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Pearson*, 427 Pa. 45, 233 A.2d 552 (1967); *Cf. Commonwealth v. Padgett*, 428 Pa. 229, 237 A.2d 209 (1968).

The prosecution has failed to establish that the error was harmless beyond a reasonable doubt. Error cannot be harmless beyond a reasonable doubt if there is a reasonable possibility that the information received by the jury contributed to the conviction. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, reh. den. 386 U.S. 987, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). When the jury learns that the person being tried has previously committed another crime, the prejudicial impact cannot be considered insignificant. "The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Commonwealth v. Groce*, 452 Pa. 15, 19, 303 A.2d 917, 919 (1973). "The fact that a reasonable inference of a prior criminal record is present in the minds of the jurors in and of itself mandates a new trial." (Emphasis added.) *Commonwealth v. Allen*, 448 Pa. 177, 183, 292 A.2d 373, 376 (1972).

Impartiality is not a technical conception. It is a state of mind. The ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular test and procedure is not chained to any ancient and artifi-

cial formula. *United States v. Wood,* 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78. The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print. *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907).

In *Commonwealth v. Santiago,* 456 Pa. 265, 318 A.2d 737 (1974), we reversed the conviction because certain jurors had received nontestimonial information that the defendant had committed a crime other than that for which he was being tried. Similarly, in this case, jurors received non-testimonial information of a prior crime other than that for which the appellant was being tried. The appellant is therefore deprived of a fair trial by a panel of impartial and indifferent jurors.

The Pennsylvania Supreme Court has also stated in *Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783 that the Commonwealth's submission that the trial court's limiting instruction mitigates the error is unpersuasive. The improper evidence is highly prejudicial and a limiting instruction would not be adequate to remove that prejudice. *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971).

■ The Commonwealth argues that the reference to college did not contain an improper inference to prior criminal activity. As aforesaid, we disagree. The Commonwealth further argues that at the time this testimony was given, the appellant failed to request that the Court give an immediate cautionary or curative instruction. The Commonwealth cites the cases of *Commonwealth v. McGonigle,* 228 Pa.Super. 345, 323 A.2d 733 (1974) and *Commonwealth v. Evans,* 465 Pa. 12, 348 A.2d 92 (1975). We do agree with the law in these cases. However, a full reading of the side bar conference makes it clear that the attorney for the defendant immediately objected to this statement and requested a side bar conference and requested a mistrial. At the side bar conference, the court stated that it did not believe that there was any indication as to how the defendant went

through college. The court made it quite clear that it did not believe that there was anything wrong with the statement so it would have been useless for the attorney to request the court to give a cautionary instruction. Therefore, the failure to request a cautionary instruction in this instance is excused.

Because we believe that there was an improper reference to prior criminal activities of the defendant, we believe that the defendant should be granted a new trial.

The Judgment of the lower court will be reversed and this matter will be remanded for a new trial.

HOFFMAN, J., concurs in the result.

HESTER, J., files a concurring and dissenting opinion.

HESTER, Judge, concurring and dissenting:

I agree with and join the majority's Opinion with the exception of the point discussed below. The defendant urges, and the majority agrees, that a new trial be granted on the basis of testimony given by Deputy Sheriff Rentschler, the undercover agent. Said testimony consisted only of the following:

Q. "Did you have any conversation with him (the defendant) at that time?

A. It was mostly talk about drug transactions. He told me how he went thru college . . .."

(N.T. p. 7).

At that point he was immediately interrupted by the assistant district attorney. The majority would grant a new trial holding that:

"We believe that the only inference that could be drawn from the statement made by the deputy sheriff was that there were many drug transactions engaged in by this defendant while he was in college. It may not necessarily be that the jury would draw the inference that the defendant actually worked his way through college by selling marijuana, but it is quite clear to us that the jury should have inferred that the defendant engaged in at least some drug transactions while in college." (p. 401).

274

The majority concludes that the testimony in question constitutes an improper reference to prior criminal activity. I do not agree. There is nothing in the answer to indicate, or that could support the assumption, that the defendant sold drugs while in college.

The defendant received a fair trial. He, as stated in the majority Opinion, was a person "who had already been selling large quantities of drugs prior to the police ever meeting him." He sold 25 pounds of marijuana to the agent for $8,500.00.

A new trial is not warranted.

I respectfully dissent.