478 A.2d 854
COMMONWEALTH of Pennsylvania
v.
Frederick MAXWELL, Appellant.

Superior Court of Pennsylvania.

Submitted February 1, 1984.

Filed July 13, 1984.

410

David A. Soltz, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and BECK and HOFFMAN, JJ.

SPAETH, President Judge:

This is an appeal from a judgment of sentence for robbery and related offenses. Appellant argues 1) that his Rule 1100 rights were violated; 2) that the complaint should have been dismissed because of an eighteen month delay between the incident and arrest; 3) that the photographic identification should have been suppressed; 4) that the victim's wallet should have been suppressed; and 5) that the trial court should have declared a mistrial because of a witness's reference to a homicide detective. We find these arguments without merit, and we therefore affirm.

The facts of the incident, as recited by the trial court, are as follows:

> James P. Davis, the complainant, was sitting in his automobile, parked in the 2600 block of Germantown Avenue, in Philadelphia, on June 2, 1979. He was hacking, i.e., seeking taxicab passengers without a license. He was approached by the defendant, Frederick Maxwell, and a companion named Mobely. The pair entered Davis' automobile and asked to be driven to Broad Street and Glenwood Avenue. While being driven to this destination, the defendant pulled a revolver from his brief case. The pair then forced Davis to go into the back seat of his car, tied him up with tape, and threatened to kill him. They then robbed him of his wallet, which contained $14 in cash, and drove to a small park in the neighborhood, where they let him out. They drove off in his car, which was later recovered by the police.

Trial court slip op. at 2.

The police obtained a search warrant for appellant's house, on the basis of an unrelated incident. During the search, Davis's wallet was found on a mantelpiece.[1] An arrest warrant was issued on June 7, 1979, but appellant fled the jurisdiction. Over a year later, on the basis of an anonymous tip, the police discovered appellant in New York City. Appellant was arrested on July 28, 1980, and was returned to Philadelphia to stand trial.

■ Appellant's only argument in support of his Rule 1100 claim is that the complaint was signed on June 6, 1979. However, the complaint was dated December 11, 1980, and Davis testified that it was his signature on the complaint. In addition, he testified that what he signed in June of 1979 was his statement concerning the incident. N.T. 3/10/82 at 50. When questioned about the date that he signed the complaint, Davis stated that he didn't sign the complaint in June but he couldn't remember when he did sign it. N.T. 3/10/82 at 52. We find that the record adequately supports the trial court's finding that "the complaint was not signed by [Davis] until December, 1980." Trial court slip op. at 6.

1. There is some question whether the wallet was found on the mantelpiece or in a mantelpiece with a movable top.

■ Appellant claims that the eighteen month delay between the incident and the arrest resulted in a denial of due process. To support this claim, appellant must show actual prejudice resulting from delay by the Commonwealth. *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978). Appellant argues that an alibi witness died and a key defense witness was unable to remember where appellant was on the day of the incident. We find no denial of due process. Appellant was a fugitive for thirteen of the eighteen months so that most of the delay is attributable to him; he has shown no prejudice resulting from delay by the Commonwealth.

■ Appellant claims that the photographic identification should have been suppressed because the array was unduly suggestive. The trial court found "no credible evidence that the photographic displays were suggestive." Trial ct. slip op. at 9. In any event, the in-court identification of appellant had an independent basis. *Commonwealth v. Farrell,* 265 Pa.Super. 41, 401 A.2d 790 (1979). Davis had ample opportunity to view appellant in broad daylight, and he gave a detailed description of appellant to the police.

■ The trial court has adequately disposed of appellant's claim that Davis's wallet should have been suppressed. We only add that the search warrant covered personal papers so that the officers were justified in searching in the mantelpiece. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

Finally, appellant argues that a mistrial should have been granted when the following occurred at trial:

Q. [ASSISTANT DISTRICT ATTORNEY]: Despite the fact that it was not put on that piece of paper, is there any doubt in your mind that that wallet was in that residence on that day?

A. [DETECTIVE BITTENBENDER]: No, sir; I, inspected the wallet and found it under that mantelpiece myself. I then gave it to Detective Kelly to give to Detective Starr from Homicide.

MR. SOLTZ [DEFENSE COUNSEL]: Objection, Your Honor, and move for a mistrial.

MR. KLEIN [ASSISTANT DISTRICT ATTORNEY]: Can we go to side bar? .

N.T. 3/10/82 at 318–19.

Appellant claims that the reference to the homicide detective "conveyed to the jury other criminal activity in the Maxwell residence and perhaps by Mr. Maxwell himself." Brief for Appellant at 12.

It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge.[2] It has been succinctly stated that "[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Commonwealth v. Trowery*, 211 Pa.Superior Ct. 171, 173–74, 235 A.2d 171, 172 (1967).

---

[2] There are certain limited exceptions to this general rule, none of which are applicable here. For example, evidence of a different crime can be introduced to prove a common scheme or design. See, e.g., *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). It is likewise permissible in some instances to impeach credibility by proof of a prior criminal record. See, e.g., *Commonwealth v. McIntyre*, 417 Pa. 415, 208 A.2d 257 (1965). After a verdict of guilty of murder in the first degree, evidence of the commission of other crimes is admissible as an aid to the jury in fixing the penalty. See, e.g., *United States ex rel. Bolish v. Maroney*, 409 F.2d 1404 (3d Cir.1969), *cert. denied*, 396 U.S. 893 [90 S.Ct. 187, 24 L.Ed.2d 168] (1969) and *Commonwealth v. Bell*, 417 Pa. 291, 208 A.2d 465 (1965). See also, Note, "Use of Prior Crimes To Affect Credibility And Penalty in Pennsylvania", 113 U.Pa.L.Rev. 382 (1965).

*Commonwealth v. Allen*, 448 Pa. 177, 181–82, 292 A.2d 373, 375–76 (1972). Not all references indicating prior criminal activity warrant reversal, however. *Commonwealth v. Nichols*, 485 Pa. 1, 400 A.2d 1281 (1979).

In a criminal case, the possible prejudicial effect of a witness's reference to prior criminal conduct of the defendant may, under certain circumstances, be removed by an immediate cautionary instruction to the jury. *Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978). In *Commonwealth v. Williams*, supra [470 Pa. 172], 470 Pa. at 178, 368 A.2d [249] at 252, this Court stated:

> [W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy. Our decisions have indicated that there are situations where the taint, resulting from an improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial....

The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. Id. at n. 4.

*Commonwealth v. Richardson*, 496 Pa. 521, 526–27, 437 A.2d 1162, 1165 (1981).

Passing references and innocuous and unintentional comments may often be cured by appropriate instructions to the jury. *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977); *Commonwealth v. Nichols, supra; Commonwealth v. Whitman*, 252 Pa.Super. 66, 380 A.2d 1284 (1977); *Commonwealth v. Markle*, 245 Pa.Super. 108, 369 A.2d 317 (1976). In some cases, however, "reference to prior unrelated criminal conduct ... would be so offensive and prejudicial as to mandate a mistrial." *Commonwealth v. Williams, supra*, 470 Pa. at 179, n. 4, 368 A.2d at 252, n. 4 (1977). Thus, in *Commonwealth v. Washington*, 488 Pa. 133, 411 A.2d 490 (1979), the Court held that a mistrial should have been granted where the Commonwealth elicited from a Commonwealth witness the fact that the defendant had been in a United States Penitentiary. Similarly, in *Commonwealth v. Durant*, 268 Pa.Super. 191, 407 A.2d 1311 (1979) we held that a mistrial should have been grant-

ed where a Commonwealth witness stated that she didn't know the defendant "was out of jail". We found that the witness's response was intentional unelicited by defense counsel and "could only result from a strong desire to convict the [defendant]." *Id.*, 268 Pa.Superior Ct. at 193, 407 A.2d 1312. In addition, we found that "[b]ecause of the nature of the testimonial reference, ... curative instructions would have been inadequate." *Id.*

▮ In this case, we find that the witness's reference to a homicide detective did not warrant a mistrial. It was not elicited by the Commonwealth, and it could have been cured by an appropriate explanation or cautionary instruction. The witness had been instructed by the Commonwealth not to mention anything about homicide detectives, N.T. 3/10/82 at 323, and other than the one reference, the Commonwealth witnesses avoided mentioning appellant's involvement in a homicide investigation. Certainly the reference was susceptible of one interpretation prejudicial to appellant. However, it was susceptible of other interpretations, and the Commonwealth offered to provide one. Defense counsel, however, rejected the offer, and also, did not request any cautionary instruction:

MR. KLEIN [ASSISTANT DISTRICT ATTORNEY]: I have been thinking about this stupid remark of this witness. I think maybe we can correct it by me asking the detective, "Detective, you mentioned some title of Detective Starr. Aren't you mistaken about it? You have it mixed up with another case?"

MR. SOLTZ [DEFENSE COUNSEL]: I think it will just draw attention to it. You are playing with fire.

THE COURT: Look, I have ruled on it and I don't think it's the kind of—in the first place, he didn't indicate and there is no indication that the defendant was ever charged with homicide, the fact that you give a picture to a detective, a homicide detective in my opinion is no indication for a mistrial.

N.T. 3/10/82 at 327.

*Cf: Commonwealth v. McFadden,* 464 Pa. 265, 346 A.2d 550 (1975) (witness's explanation of police records dispelled improper inference).

■ In these circumstances we find no error. Where it appears that an explanation by the witness or a curative instruction by the court would dispel any improper inference from an ambiguous remark, defense counsel has the obligation to make a choice, either to ask for an explanation or instruction, or to disregard the comment so as not to draw attention to it.[2]

Affirmed.

**2.** Appellant does not allege that counsel was ineffective in failing to request a cautionary instruction.